**BRIDGESTONE/FIRESTONE, INC., Plaintiff–Appellee,**

v.

**RECOVERY CREDIT SERVICES, INC., Revenue Recovery, Inc. and George Beladino, Defendants–Appellants.**

No. 1275, Docket 95–7759.

United States Court of Appeals, Second Circuit.

Argued April 3, 1996.

Decided Oct. 17, 1996.

Norman A. Olch, New York City, for Defendants–Appellants.

Susan T. Dwyer, Herrick, Feinstein LLP, New York City (Steve L. Klepper, of counsel), for Plaintiff–Appellee.

Before WINTER, JACOBS, and CALABRESI, Circuit Judges.

WINTER, Circuit Judge:

This action concerns Bridgestone/Firestone's ("BFI" 's) claim that appellants Recovery Credit Services, Inc. ("RCS"), Revenue Recovery, Inc. ("RRI") (collectively, "the Collection Agencies"), and George Beladino, their principal, fraudulently failed to remit to BFI amounts that the Collection Agencies had collected on BFI accounts. Appellants challenge the district court's piercing of the corporate veil, findings of fraud, quantification of damages, and award of attorney's fees. Finally, they argue that Judge Martin should have recused himself. We affirm in part, reverse in part, and remand.

Since 1986, BFI has administered certain private label credit card programs, first for Society National Bank and then, in 1993, for Credit First National Association. BFI contracted with the Collection Agencies to col-

lect delinquencies on credit card accounts. Under agreements between BFI and the Collection Agencies executed in 1985 and 1991, the Agencies were required to remit on a biweekly basis monies collected on BFI accounts. The agreements also required the Collection Agencies to provide a monthly status report and to maintain all records relating to collections for a five-year period.

In February 1992, BFI's H. Paul Binder visited the Collection Agencies' offices to conduct an audit of BFI accounts placed with the Agencies. As part of that audit, Binder inspected Agency "collection cards" that recorded contacts with debtors, current telephone numbers and addresses, dates and amounts of payments, and other debtor data. The only collection cards available were for 1990–91 because the collection cards for earlier years had been destroyed. This disposition of records was in violation of the agreements. Binder instructed Beladino not to destroy any further records required under the agreements. However, during a subsequent audit in October 1992, Binder found that records available during the earlier audit, and collection cards for 1991–92 as well, had been destroyed.

On January 11, 1993, BFI brought this action alleging breach of contract, conversion, breach of fiduciary duty, unjust enrichment, fraud, and tortious interference with contract. It sought an accounting, an order of seizure, and damages. The parties stipulated, *inter alia*, that the Collection Agencies, Beladino, and their counsel would turn over all records in their possession concerning BFI accounts. Appellants' performance of their obligations under the stipulation was unsatisfactory, and BFI subsequently sought and obtained an order "attach[ing] all assets and property in the possession, custody or control of any of the defendants" and providing "for turnover to Bridgestone of all records in the possession, custody or control of any of the defendants relating to Bridgestone's business." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 147 F.R.D. 66, 67 (S.D.N.Y.1993). Appellants failed to comply with the order to turn over the records, and in February 1993, BFI moved for a default judgment as a sanction for alleged perjury and flagrant discovery abuse.

Magistrate Judge Fox, to whom the matter had been referred, denied BFI's application without prejudice to allow the Collection Agencies to seek legal representation, but noted that

[i]n the event an attorney admitted to practice before this Court fails to enter an appearance on their behalf on or before March 31, 1994, ... [I], *sua sponte*, will recommend to [the district court] that a default judgment be entered against them and that the matter be referred ... for an inquest on damages. If counsel does appear, the Defendant corporations will then have fifteen (15) days from the date of filing of the notice of appearance to comply with the Court's directions ... by providing a written statement, signed by a corporate official with knowledge, of when, where and by whom records pertaining to the accounts referred by Plaintiff were destroyed.

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (VLB) (MDF), at 3–4 (S.D.N.Y. Feb. 25, 1994) (citations omitted) (order denying motion to strike answer and enter default judgment). Magistrate Judge Fox further cautioned that

[i]n light of the submissions on the Plaintiff's motion and the Court's familiarity with this matter through supervising discovery, it appears that at an inquest Plaintiff may well be able to establish that the strongest of adverse inferences should be drawn against the Defendants in evaluating the proof of damages and in determining the amount of damages.

*Id.* at 4.

On June 2, 1994, Magistrate Judge Fox issued a careful and thorough Report and Recommendation detailing appellants' record of obfuscation and delay, concluding that "Beladino has behaved in the manner of the quintessential deadbeat." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (VLB) (MDF), at 9 (S.D.N.Y. June 2, 1994). As a sanction he recommended entry of a partial grant of summary judgment against the corporate defendants on the issue of liability and referral for an inquest

on damages. The order applied only to the corporate defendants because Beladino was then protected by an automatic bankruptcy stay. Judge Broderick adopted the Report and Recommendation and referred the matter for the necessary inquest. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (VLB), 1994 WL 383195, at *2 (S.D.N.Y. July 20, 1994) (memorandum order).

After the bankruptcy stay was lifted, BFI moved for partial summary judgment against Beladino on the same ground on which it was granted against the corporate defendants. Judge Broderick ruled that unless Beladino provided an affidavit within 30 days establishing that he was not responsible for the destruction of records, partial summary judgment would be entered. Beladino filed a conclusory and argumentative document labeled "affidavit." No judgment was ever entered. This omission probably occurred because of Judge Broderick's unfortunate illness and death.

The case was transferred to Judge Martin for trial. BFI's evidence consisted of affidavits and testimony from three witnesses. Shawn R. Russell, general counsel of the credit card services division of BFI, provided evidence that Beladino, sometimes using the name "John Grasso," owned and operated both Collection Agencies. Russell's evidence on this issue included a page from the American Collectors Association 1992 Membership Roster indicating that "John Grasso" held himself out as President of RCS. Russell also provided a September 16, 1991 transmission letter accompanying the signed 1991 collection agreement, in which Beladino indicated that "[a]t present we are operating under two names, Revenue Recovery, Inc. and Recovery Credit Services, Inc. All collections at present is [sic] being handled under Recovery Credit Services, Inc., so I took the liberty of adding that corporate name to your collection agreement."

Binder's affidavit and testimony traced the relationship between the parties. BFI first placed its accounts with RRI in February 1984. Binder testified that at the outset of the relationship between RRI and BFI, David Storm, president of RRI, advised BFI that it should deal with the New York office run by John Grasso with regard to collections in certain states. Binder further stated that at no time in his experience dealing with the Collection Agencies did he deal with anyone who held himself out as principal other than Beladino. Binder also recounted the events concerning the audits in 1992.

Binder offered evidence of damages derived from records available to BFI, from documents secured as part of his audit of the Collection Agencies' records, and from the scant evidence produced in response to BFI's discovery demands. Binder calculated that 8.78% of the accounts placed in 1992 represented the difference between the sums paid in 1992 by the Collection Agencies to BFI and the actual amounts collected from BFI customers as reported on the Agencies' own collection cards and in contacts with the customers themselves. Because virtually all of the collection cards for the years 1987 through 1991 had been destroyed, Binder was unable to document actual damages for those years. Instead, Binder proffered a calculation of $300,310 in damages for those years based on an 8.78% "rate of recovery" on the accounts, less an appropriate commission on the funds collected. He explained that this approximation of damages was necessary because it was impossible to contact each of the approximately 66,000 debtors referred to the Collection Agencies during the 1987–1991 period. Indeed, the most current addresses for those debtors were in records that had been destroyed.

BFI also called Eli Rosman, a certified public accountant, as a witness.[1] Rosman reviewed various accounting records and other financial documents of RCS and Eastern Investigative Bureau, Inc. ("Eastern"), a Beladino business operating at the same address. Although a number of crucial financial records, including Eastern's cash receipts and cash disbursement journals, were either missing or unavailable, Rosman documented a pattern of unexplained substantial cash disbursements between RCS and East-

---

1. Susan Dwyer, appellee's counsel, also introduced a marshalling affidavit at trial containing allegedly perjurious documents submitted during the course of this litigation.

ern. In addition, the 1991 corporate income tax return of RCS revealed no capitalization whatsoever for the relevant tax year and a loss of $54,222.54 for the period covered by the return. A December 31, 1992 trial balance for RCS likewise revealed no capitalization and substantial overdrafts in a number of accounts, and a detailed run of the same date indicated numerous exchanges of funds between RCS and Eastern.

Beladino was the only witness to testify for appellants. He admitted underpayment to BFI in 1992, acknowledging that he used monies due to BFI to meet the day to day needs of his collection businesses. Nevertheless, Beladino disputed BFI's version of appellants' alleged withholding and destruction of records, testifying that BFI had historically been satisfied with the Collection Agencies' recordkeeping practices, which included the discarding of files for an account after the account was recalled by BFI, abandoned, or paid in full. Beladino also testified that in November 1992, he had delivered to BFI 1742 collection cards for approximately 1000 paid-in-full accounts and 700 actively paying accounts for the years 1990, 1991, and 1992.

With respect to his relationship to the Collection Agencies, Beladino testified that he was only an employee of RRI from 1984 until the corporation was officially dissolved as of December 31, 1990 and that he had formed a new corporation, RCS, in September of 1990, with himself as the sole corporate officer. On cross-examination, Beladino acknowledged that when he incorporated RCS, he "took over the business of RRI" with respect to BFI accounts and transferred the BFI account records to the new corporation, which he described as having the "[s]ame place, same people, same phone, same stationery. Just the change in name. Everything else was the same." Beladino further testified that if a check arrived payable to RRI after December 31, 1990, the check was deposited in the RCS account.

The district court found that Beladino "has for a long period of time conducted a fraudulent activity in which he stole the money that rightfully belongs to the plaintiff, [and] destroyed the records that would show his fraud." It adopted Binder's calculation of damages and held Beladino and the corporate defendants personally responsible in fraud, finding that the Collection Agencies were undercapitalized shells that were mere "alter egos" of Beladino. The district court also awarded BFI the full amount of its attorney's fees as contract damages against all three appellants, and awarded BFI an amount equal to its full attorney's fees as a Rule 11 sanction against Beladino.

Finally, the district court invited briefing from the parties on whether attorney's fees were a permissible component of fraud damages under New York law. Following submission of briefs by the parties, Judge Martin made an additional fee award based on appellants' fraud and bad faith litigation. Appellants moved thereafter to vacate the judgment, to recuse Judge Martin, and to obtain a new trial under Rule 60(b), arguing that Judge Martin should have recused himself because as United States Attorney, Judge Martin had appeared as counsel of record in an unrelated action against Beladino some fourteen years earlier. The district court denied the motion. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (S.D.N.Y. June 29, 1995) (memorandum order). This appeal followed.

### A. Piercing the Corporate Veil

Our discussion of various legal issues might be different were we bound to respect the corporate forms used by the Collection Agencies. However, we agree with Judge Martin that appellants should be treated as a single entity.

New York courts "disregard corporate form reluctantly," *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir.1990) (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979)), and "allow[ ] individuals to incorporate for the very purpose of avoiding personal liability," *Gartner*, 607 F.2d at 586. The corporate veil will be pierced only when the corporate "form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation ... and its separate identity so disregarded, that

it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Id.* at 586. In making this determination, courts look to a variety of factors, including the intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors. *William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 600–01 (2d Cir.1989) (citing cases).

■ However, courts recognize that with respect to small, privately-held corporations, "the trappings of sophisticated corporate life are rarely present," and we must avoid an over-rigid "preoccupation with questions of structure, financial and accounting sophistication or dividend policy or history." *Id.* at 601. Thus, although there is no mechanical rule as to how many and to what degree the factors outlined in *Wrigley* must be present to pierce the corporate veil, the courts apply the preexisting and overarching principle "that liability is imposed to reach an equitable result." *Brunswick Corp. v. Waxman,* 599 F.2d 34, 36 (2d Cir.1979) (citation and internal quotation marks omitted).

On the present record, BFI presented evidence demonstrating that RCS and RRI were shells operating as the alter ego of Beladino. Binder testified that Beladino acted as the principal of both Agencies. Beladino testified that, as to RRI, he was only an employee; but the court was not required to credit that assertion, particularly since Beladino, not the world's most credible witness, was in the best position to produce persuasive evidence of his actual role. By his own admission, Beladino caused RCS to take over RRI's business with BFI in 1990. RCS not only took over RRI's records but also cashed checks payable to RRI. RCS was the "[s]ame place, same people, same phone, same stationery. Just the change in name. Everything else was the same." Indeed, RCS had begun collections under BFI's 1985 agreement with RRI without notice to BFI. After BFI sent the 1991 agreement to Bela-

dino for signature, the latter added RCS as a party to the agreement, which originally named only RRI, because "we are operating under two names [RRI] and [RCS]" and RCS was "present[ly]" doing the collections for BFI.

This was strong evidence that Beladino shuttled business between RRI and RCS at will, including the transfer of records that were later destroyed. Moreover, Beladino freely shuttled funds between RCS and Eastern, another Beladino-controlled entity. We therefore agree with the district court that RCS and Beladino should be liable for damages attributable to RRI's misconduct prior to 1991. There is ample evidence in the record to indicate that the corporations were, as Judge Martin found, "not in fact separate entities."

B. *The Award of Damages For Breach of Contract*

■ Magistrate Judge Fox's Report and Recommendation concluded that partial summary judgment should be granted against the Collection Agencies as to liability (a bankruptcy stay protected Beladino against a similar ruling) and that damages should be determined at an inquest. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,* No. 93 Civ. 0168 (VLB) (MDF) (S.D.N.Y. June 2, 1994), as adopted by Judge Broderick, *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,* No. 93 Civ. 0138 (VLB), 1994 WL 383195, at *2 (S.D.N.Y. July 20, 1994).

This brings us to a technical matter. The Third Amended Judgment states only that "the Court further finds that the two corporate defendants were no more than alter egos of George Beladino and each corporate defendant shall be held liable for the full amount of $307,435." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,* No. 93 Civ. 0168 (JSM), at 1 (S.D.N.Y. July 14, 1995) (Third Amended Judgment). Instead of reflecting a damage award resulting from the sanction that granted judgment against the corporations, the judgment indicates a liability derived from Beladino's conduct. We think that it should be the other way around. Beladino is liable under veil piercing for mi-

susing the corporate appellants. However, all this appears to be of no practical consequence because Judge Martin's calculation of damages was based on Binder's affidavit and testimony, which is fully determinative of the liability of all appellants. If our assumption in this regard is incorrect, an appropriate adjustment in the judgment can be made on remand.[2]

Appellants raise various challenges to the sanctions imposed, inferences drawn from the destruction of records, and Binder's method of calculating unremitted collections. Each is meritless. Magistrate Judge Fox's determination that appellants concealed their nonpayment of monies owed by destroying or withholding relevant records and abused discovery processes was well-founded. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (VLB) (MDF) (S.D.N.Y. June 2, 1994). We adopt his discussion in that regard.

We also agree that BFI's evidence of its loss and the amount of that loss is legally sufficient to support the judgment. Appellants were under a contractual obligation to maintain and provide records that would allow BFI to monitor collections and verify non-collections. Having destroyed records for BFI accounts for 1987–1991, appellants are hardly in a position to argue seriously that BFI's use of the only determinable rate of underpayment—for 1992—to prove losses during other periods of time is impermissible.

Appellants' principal argument is that BFI is free to contact account customers to determine the extent of the Collection Agencies' nonremittance and that the information on the destroyed collection cards is consequently readily available to BFI. Appellants' position, of course, ignores the reality of the situation and their own disregarded contractual obligations. First, BFI had little reason to hire the Collection Agencies if it was going to continue to contact delinquent account customers, and even less reason to require

recordkeeping if it had independently to compile identical records. The accounts in question represent so-called "secondary" collections—that is, the accounts referred to the Collection Agencies were ones that BFI itself had been unable to collect. The customers in question were, therefore, most unlikely to cooperate with BFI or indeed even to make their current whereabouts known. Binder's evidence regarding the existence of unremitted collections and the extent of loss was thus sufficient to support the judgment on a breach of contract theory.

### C. The Fraud Judgment

■ The findings of the district court do not support a judgment for fraud. To prove fraud under New York law, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995). BFI's complaint alleged, and its proof showed, that "[o]n numerous occasions between February and December 1992, Agency and Beladino knowingly and falsely represented to BFI that Agency intended to remit all sums due and owing to BFI under the Collection Agreement," citing, as specific examples, several checks allegedly submitted to BFI as payment with knowledge that they were drawn on insufficient funds.

We may assume that these representations were intended to lull BFI into a false sense of security and that they did so to BFI's detriment. However, these facts amount to little more than intentionally-false statements by Beladino indicating his intent to perform under the contract. That is not sufficient to support a claim of fraud under New York law. *See McKernin v. Fanny Farmer Can-*

---

2. There is another technical matter. Judge Martin, as explained below, found that appellants committed fraud. He did not state expressly that appellants also had breached the 1985 and 1991 agreements. However, his findings that the pertinent records were destroyed and that monies collected on BFI's behalf were not remitted establish a breach as a matter of law. Indeed, as the discussion below indicates, we vacate the fraud finding because Judge Martin equated a failure to carry out contractual obligations with fraud.

*dy Shops, Inc.,* 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (2d Dep't 1991) (where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie"); *Metropolitan Transp. Auth. v. Triumph Advertising Productions,* 116 A.D.2d 526, 527, 497 N.Y.S.2d 673, 675 (1st Dep't 1986) (dismissing fraud claim where claim "allege[d] only a breach of the representation of performance implicit in making the bid and a subsequent assurance of performance" by the defendant). *See generally Papa's–June Music, Inc. v. McLean,* 921 F.Supp. 1154, 1162 (S.D.N.Y.1996) (dismissing fraud claim where "[t]he complaint does not allege a fraud claim that is sufficiently distinct from the breach of contract claim" but "merely appends allegations about [defendant's] state of mind to the claim for breach of contract").

■ To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, *see Van Neil v. Berger,* 219 A.D.2d 811, 811, 632 N.Y.S.2d 48, 48 (4th Dep't 1995) (memorandum); *see also Papa's–June Music,* 921 F.Supp. at 1161 (citing cases); or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, *see Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) (memorandum) (refusing to dismiss fraud claim alleging "a misrepresentation of present fact, not of future intent" which misrepresentation was "collateral to, but which was the inducement for the contract" and thus not duplicative of contract claim) (citations and internal quotation marks omitted); *Triumph Advertising,* 116 A.D.2d at 527, 497 N.Y.S.2d at 675, *see also Papa's–June Music,* 921 F.Supp. at 1161 (citing cases); or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages, *see Deerfield,* 68 N.Y.2d at 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003; *Triumph Advertising,* 116 A.D.2d at 527–28, 497 N.Y.S.2d at 675; *see also Papa's–June Music,* 921 F.Supp. at 1161 (citing cases). As

matters stand, BFI's fraud claim meets none of these requirements.

■ BFI claims that the appellants owed BFI a fiduciary duty distinct from their obligation to perform under the collection agreement, potentially implicating (i) above. We disagree. Beladino did not occupy a position of trust or special confidence with regard to BFI that imposed obligations beyond the express agreements. *See Gordon v. Bialystoker Ctr. & Bikur Cholim, Inc.,* 45 N.Y.2d 692, 698, 412 N.Y.S.2d 593, 385 N.E.2d 285 (1978); *Penato v. George,* 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 904 (2d Dep't 1976), *appeal dismissed,* 42 N.Y.2d 908, 397 N.Y.S.2d 1004, 366 N.E.2d 1358 (1977); *see also Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters.,* 833 F.Supp. 344, 349–50 (S.D.N.Y. 1993). He had little discretion to exercise, his obligations under the contract being straightforward and fixed. Whatever trust and confidence was placed in him had solely to do with his carrying out his obligations under the contract. Nor was he relied upon for advice or the exercise of judgment based on superior information or professional expertise. We therefore vacate the finding of fraud.

### D. *Setoff*

Appellants argue that the district court improperly failed to permit them a setoff for commissions due on accounts that were transmitted to appellee. Although this issue was raised by appellants' counsel during trial, it appears that the district court deferred the setoff issue for later consideration but never ruled upon it. We therefore remand for appropriate proceedings concerning appellants' entitlement to a setoff.

### E. *Attorney's Fees*

Finally, the appellants challenge the district court's award of attorney's fees to the appellee under theories of contract and fraud, for bad faith litigation, and as a sanction for violating Rule 11.

■ We consider first the district court's award of counsel fees as an element of contract damages. Under New York law, the intent to provide for counsel fees as

damages for breach of contract must be "unmistakably clear" in the language of the contract. *Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989); *see also Flores v. Las Americas Communications, Inc.*, 218 A.D.2d 595, 595, 630 N.Y.S.2d 502, 502 (1st Dep't 1995) (memorandum decision), *leave to appeal dismissed in part and denied in part*, 87 N.Y.2d 1051, 644 N.Y.S.2d 140, 666 N.E.2d 1054 (1996). Both the 1985 and 1992 collection agreements provide that

> [t]he Agency shall indemnify and save [BFI] harmless from any and all claims, demands or causes of action, any and all costs or expenses, including attorney fees, that may be asserted due or arising out of the Agency's collection activity or employee dishonesty deemed contrary to prevailing guidelines on accounts referred by [BFI]
>
> . . . .

This language is not an unmistakably clear statement that such damages were intended. *Cf. Sequa Corp. v. Gelmin*, 851 F.Supp. 106, 110–11 (S.D.N.Y.1994); *Bourne Co. v. MPL Communications, Inc.*, 751 F.Supp. 55, 57–58 (S.D.N.Y.1990) (contract did not contemplate attorney fee indemnification between parties where agreement to indemnify did not expressly mention indemnification for suits between the parties and claims covered by agreement were not exclusively or unequivocally claims between parties themselves); *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (same). The language may easily be read as limited to third party actions against BFI by, for example, persons from whom the Agencies demanded money. The award of fees cannot, therefore, be supported by the contract's indemnification clause.

■■■ The district court also entered an amended judgment imposing liability for attorney's fees "as a matter of . . . *fraud*" on the appellants. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (JSM) (S.D.N.Y. July 14, 1995) (Third Amended Judgment). Because we vacate the fraud finding, this award must fall. Insofar as the judgment's inclusion of attorney's fees "as a matter of . . . *fraud*" is an award based on bad faith and "fraudulent conduct by the defendants throughout this litigation," *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (JSM), at 2 (S.D.N.Y. May 23, 1995) (memorandum opinion and order), the district court should make clear on remand whether it believes that such an award is still warranted in light of our decision. Where a district court finds that the appellants conducted litigation in bad faith, an award of attorney's fees is clearly proper. *See Ostano Commerzanstalt v. Telewide Sys., Inc.*, 880 F.2d 642, 650 (2d Cir.1989). If proper findings were made, we would affirm the district court's conclusion that the appellants have conducted this litigation with "the requisite bad faith in the continuing fraudulent conduct by the defendants throughout the pre-trial proceedings and the trial which included the destruction of documents and perjury." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (JSM), 1995 WL 331985, at *1 (S.D.N.Y. June 5, 1995) (memorandum opinion and order awarding attorney's fees for bad faith litigation). Where a district court makes such an award, however, we require "a high degree of specificity in the factual findings," *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991) (internal quotation marks and citations omitted), and those factual findings should include findings on "what proportion of the plaintiffs' attorney fees resulted from the offensive conduct," *Telewide Systems*, 880 F.2d at 650 (remanding for determination of appropriate award). Such findings were not made, and we therefore remand.

Finally, we turn to the imposition of sanctions under Federal Rule of Civil Procedure 11. The district court failed to give appellants notice and an opportunity to be heard as required by Rule 11(c), Fed.R.Civ.P., and did not identify specific sanctionable filings as required by *Coltrade Int'l, Inc. v. United States*, 973 F.2d 128, 131–32 (2d Cir.1992). We therefore also remand for further proceedings regarding Rule 11 sanctions.

## F. *Recusal*

Finally, appellants argue that Judge Martin should have recused himself and ordered

a new trial because as United States Attorney, Judge Martin had appeared as counsel of record in an unrelated action against appellant Beladino some fourteen years earlier. Recusal is unnecessary for the reasons stated in Judge Martin's Memorandum Order. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, No. 93 Civ. 0168 (S.D.N.Y. June 29, 1995).

### G. *Conclusion*

We affirm the damage award against all appellants for breach of contract subject to proceedings on remand regarding a right to a setoff. We vacate the fraud judgment and remand for further proceedings regarding attorney's fees.