TN METRO HOLDINGS I,
LLC, et al., Plaintiffs,

v.

COMMONWEALTH INSURANCE
COMPANY, Defendant.

Case No. 11–CV–6063 (KMK).

United States District Court,
S.D. New York.

Signed Sept. 30, 2014.

Pincus David Carlebach, Esq., Law Offices of David Carlebach, New York, NY, for Plaintiff.

Dawn Marie Brehony, Esq., Theodore Alred Mottola, Esq., Chauson Miller, PC, New York, NY, for Defendant.

## ORDER

KENNETH M. KARAS, District Judge:

Plaintiffs TN Metro Holdings I, LLC; TN Metro Holdings III, LLC; TN Metro Holdings IV, LLC; TN Metro Holdings V, LLC; TN Metro Holdings VI, LLC; TN Metro Holdings VII, LLC; TN Metro Holdings VIII, LLC; TN Metro Holdings IX, LLC; and TN Metro Holdings X, LLC, (collectively "Plaintiffs" or "TN Metro"), by their counsel, have filed this Action against Commonwealth Insurance Company ("Commonwealth") alleging breach of contract and unjust enrichment, and have now filed a Motion To Amend their Complaint to allege an additional claim of fraud. For the reasons stated below, Plaintiffs' Motion is denied.

## I. BACKGROUND

### A. Factual Background [1]

Plaintiffs are nine Tennessee Limited Liability Companies that own real property in Tennessee (the "Tennessee Properties") and that share a principal place of business in New Rochelle, New York. (*See* Am. Compl. ¶ 1, 5–10.) On January 24, 2007, Plaintiffs signed an Interest of Purchase and Sale Agreement with Green Realty Development Company, LLC, ("Green Realty") to purchase all of the properties at issue. (*Id.* ¶ 12.) This purchase occurred on April 24, 2007, but the transaction took "took two days to close and continued from April 24, 2007 to April 25, 2007." (*Id.*) Plaintiffs allege that, by vir-

---

1. For the purposes of the instant Motion, the Court will assume the facts as stated in Plaintiffs' proposed Amended Complaint ("Am. Compl."), which was attached as "Exhibit B" to the Declaration of David Carlebach ("Carlebach Decl."). (*See* Dkt. No. 42.)

tue of the sale, they became assignees and beneficiaries of insurance policy US6703 issued by Commonwealth (the "Policy"). (*Id.* ¶¶ 14, 37.) Section 8.1 of the Sales Agreement provides that:

If [TN Metro] has elected not to terminate this Agreement in the event of a damage to the Real Properties as set forth in this paragraph, [TN Metro] shall proceed to the closing, and shall pay the full purchase price less the amount of any deductible under [Green Realty's] insurance policy, and [Green Realty] shall assign to [TN Metro] and [TN Metro] shall have a right to make the claim for and to retain any casualty insurance proceeds under the casualty insurance policies in effect with respect to the Real Properties on account of such damage or destruction.

(*Id.* ¶ 38.) On April 24, 2007, while the transaction was closing, the properties at issue were damaged by a severe hail storm. (*Id.* ¶ 13.) On May 9, 2007, the princip[al] of Green Realty "was hit by a car and incapacitated in a comatose state for several months." (*Id.* ¶ 18.) As a result of this accident, "Plaintiffs were unable to obtain the necessary assignment, power of attorney, or authority to submit claims to the insurance carriers . . . until November 2007." (*Id.* ¶ 19.) The TN Metro entities began to submit their claims to Commonwealth on November 15, 2007, (*id.*), and included the Sale Agreement, which described the transfer of Green Realty's stock and membership interest in the insured properties, (*id.* ¶ 21).

After Plaintiffs submitted their claims, Commonwealth's "representatives repeatedly advised Plaintiffs that the compensation checks were being processed." (*Id.* ¶ 22.) Indeed, according to Plaintiffs, Green Realty gave approval to Commonwealth to send payments to Plaintiffs' counsel. (*Id.*) Follow-up telephone inquiries, however, produced no checks. (*Id.*) Instead, Commonwealth questioned the condition of the Tennessee Properties at the time of sale, (*id.* ¶ 23), and suggested that the damage might have been caused by additional storms between the sale and the filing of the insurance claims, (*id.* ¶ 25). According to Plaintiffs, the delays in compensation were problematic because they could not repair the damage and therefore rent out the units. (*Id.* ¶ 24.) This, in turn, prevented Plaintiffs from making their debt payments. (*Id.*) On June 4, 2008, "approximately a year and a half after submission of the claims," Defendant's agent sent Green Realty a letter, stating that "Defendant may not approve the claim as it is still under investigation," and making clear that "only damages incurred to the [properties at issue] prior to April 25, 2007 could potentially be covered" under the policy. (*Id.* ¶ 27.)

In an October 30, 2008 report, Defendant's adjuster made the following notes: "No impact on sale? Insured made whole by the sale? Confirm no assignment? Any financial loss?" (*Id.* ¶ 34.) According to Plaintiffs, these notes "illustrate [Commonwealth's] intent to find a theory for nonpayment of the claim because the impact of the sale, whether the insured was made whole by the sale, and whether any financial loss was incurred by Plaintiff[s] is entirely irrelevant to Defendant's contractual duties to pay for the damaged Properties." (*Id.* ¶ 35) In particular, Plaintiffs contend that the adjuster's notes "reveal that he intended to confirm that there was no assignment, in order to use the lack of assignment to avoid payment on the claim." (*Id.*)

As part of this alleged effort, Defendant sent a letter to Plaintiffs on August 31, 2009 requesting "proof of assignment of liquidated claim" and indicating that "[u]nless [TN Metro] can provide [Commonwealth] with written documentation establishing an assignment of Green Realty's claim under the Policy to TN Metro Hold-

ings within the next thirty (30) days, [Commonwealth] will close [its] file on this matter." (*Id.* ¶ 36.) TN Metro was "unable to find such an assignment, because such a document does not exist and is entirely unnecessary" given the assignment of claims in Section 8.1 of the Sales Agreement, as discussed above. (*Id.* ¶¶ 40, 38.)[2] Furthermore, proof of such assignment "appears nowhere in the four-corners of the insurance contract" at issue in this case. (*Id.* ¶ 39.) Plaintiffs allege that "in all communications with Plaintiff[s], Defendant implied the missing 'assignment' was the necessary missing link that prevented Defendant from paying the claim." (*Id.* ¶ 42.)

However, Plaintiffs allege that Defendant's statements were delay tactics designed to "prevent Plaintiff[s] from being able to pursue a cause of action against Defendant" so that Defendant could avoid "avoid paying on the claim." (*Id.* ¶ 39, 43.) Plaintiffs further submit that "Commonwealth knew full well that . . . the principal of Green Realty was in a coma . . . and would therefore be unable to assign the claim to TN Metro." (*Id.* ¶ 45.)[3] In fact, according to Plaintiffs, "Commonwealth's own internal documents reveal that they were aware of [the principal's] state and therefore [Commonwealth] asked for the 'assignment of liquidated claim' with full knowledge that it could not be produced."[4] (*Id.* ¶ 46.)

### B. Procedural History

On August 30, 2011, Plaintiffs filed this suit, alleging both a breach-of-contract

claim and an unjust enrichment claim. (*See* Dkt. No. 1.) On April 30, 2012, Defendant filed a Motion To Dismiss, (*see* Dkt. No. 17), which the Court denied on February 25, 2013, ordering Defendant to "submit a motion for summary judgment" within fourteen days, (*see* Feb. 25, 2013 Order 2 (Dkt. No. 23)). Plaintiffs requested discovery, to which Defendant objected in a letter to the Court. (*See* Dkt. No. 24.) The Court held a conference to discuss the need for discovery and, pursuant to the Court's April 22, 2013 Order, the Parties engaged in discovery limited to the issue of this suit's timeliness. (*See* Dkt. No. 26.)

On November 18, 2013, Plaintiffs filed a Motion To Amend their Complaint to allege a claim of fraud, based on documents produced as part of the aforementioned discovery. (*See* Dkt. No. 41.) Plaintiffs also filed a Memorandum of Law in Support ("Pls.' Mem.") and Declaration of David Carlebach, Esq., ("Carlebach Decl."), along with accompany exhibits. (*See* Dkt. No. 42.) Defendant filed its Memorandum of Law in Opposition ("Def.'s Mem."), and Declaration of Dawn M. Brehony ("Brehony Decl.") on December 6, 2013. (*See* Dkt. No. 44.) On December 18, 2013, Plaintiffs filed their Reply ("Pls.' Reply"). (*See* Dkt. No. 48.)

## II. DISCUSSION

### A. Standard of Review

 Federal Rule of Civil Procedure 15 supplies the legal standard applicable to

---

**2.** This allegation is included in the proposed Amended Complaint notwithstanding the other allegation that Plaintiffs "were unable to obtain the necessary assignment . . . until November 2007." (Am. Compl. ¶ 19.)

**3.** However, the proposed Amended Complaint does not allege that the seller was in a permanent coma, but was instead in a coma for

"several months" beginning in May 2007. (*Id.* ¶ 18.)

**4.** It is not clear why this was so, given that Plaintiffs allege the principal's coma lasted only several *months* after May 2007, and that Commonwealth was asking for the assignment over two years later (in August 2009).

a motion to amend a complaint. Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed.R.Civ.P. 15(a)(2). However, " 'it is within the sound discretion of the district court to grant or deny leave to amend.' " *Barbata v. Latamie,* No. 11–CV–7381, 2012 WL 1986981, at *2 (S.D.N.Y. June 4, 2012) (quoting *Green v. Mattingly,* 585 F.3d 97, 104 (2d Cir.2009)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). However, "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir.2002). "A proposed amendment is futile if the amended pleading fails to state a claim upon which relief could be granted, and would thus not survive a motion to dismiss." *UniWorld Capital, L.P. v. Preferred Fragrance, Inc.,* 43 F.Supp.3d 236, 242, 2014 WL 3610906, at *3 (S.D.N.Y. July 21, 2014).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face." " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In considering a motion to dismiss, the Court is required to construe the factual allegations contained in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all

reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero,* 572 F.Supp.2d 463, 466 (S.D.N.Y.2008) (same). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal quotation marks omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (noting that the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" (citing *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000))).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (second alteration in original) (citations omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.,* and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, 127 S.Ct. 1955. Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570,

127 S.Ct. 1955. But if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.; see also Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2))).

### B. Analysis

■ Defendant opposes Plaintiffs' Motion on grounds that amendment would be futile, arguing both that Plaintiffs' fraud claim is not independent of Plaintiffs' breach-of-contract claim and that Plaintiffs' proposed Amended Complaint fails to adequately allege fraud under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. (*See* Def.'s Mem. 9–25.) Defendant does not argue bad faith, undue delay, or that Defendant would suffer undue prejudice if Plaintiffs' Motion were to be granted, nor does the Court independently find reason to deny Plaintiffs' Motion on these grounds. Thus, the Court will consider only whether the amendment of Plaintiffs' Complaint to add the proposed fraud claim would be futile.

■ "Under New York law, a fraud-based claim must be 'sufficiently distinct from [a] breach of contract claim' where it stems from an alleged breach of contract." *Kriegel v. Donelli,* No. 11–CV–9160, 2014 WL 2936000, at *13 (S.D.N.Y. June 30, 2014) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.,* 98 F.3d 13,

20 (2d Cir.1996)); *Sichel v. UNUM Provident Corp.,* 230 F.Supp.2d 325, 328 (S.D.N.Y.2002) ("New York law precludes fraud actions where the only fraud charged relates to a breach of contract." (internal quotation marks and alteration omitted)). When a plaintiff brings a fraud claim in tandem with a contract claim, the fraud claim may only proceed where the plaintiff (i) can "demonstrate a legal duty separate from the duty to perform under the contract"; (ii) can "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract"; or (iii) "seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone,* 98 F.3d at 20 (internal quotation marks and alteration omitted). In fact, "breaching a contract does not constitute fraud unless some legal duty to the plaintiff that is independent of the contract is violated. Any such independent duty must spring from circumstances extraneous to, and not constituting, elements of the contract itself." *Kriegel,* 2014 WL 2936000, at *13 (internal quotation marks omitted); *GS Equities, Ltd. v. Blair Ryan Co.,* No. 08–CV–1581, 2011 WL 3278909, at *6 (S.D.N.Y. July 26, 2011) (same). Here, Plaintiffs do not allege that Commonwealth owed them a duty separate from Commonwealth's duty to perform under the contract, (*see* Am. Compl. ¶¶ 54–58), nor do they seek relief distinct from that which they claim they are due as a result of Defendant's alleged breach of contract. (*See* Am. Compl. ¶¶ 59(a), (c)); *see also Kriegel,* 2014 WL 2936000, at *14 (finding that the third *Bridgestone* factor favored dismissal of Plaintiff's fraud claim where the plaintiff "d[id] not claim any special damages resulting from the alleged fraud, and indeed explicitly s[ought] identical relief for his fraud and contract claims").[5]

---

**5.** In fact, the portion of the proposed Amend- ed Complaint where Plaintiffs assert damages

Thus, the only basis for a fraud claim separate from Plaintiffs' breach-of-contract claim that Plaintiffs can assert under *Bridgestone* is that Defendant made a "fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone,* 98 F.3d at 20; (*see* Pls.' Mem. 6–8; Pls.' Reply Mem. 4–5).

█ "In assessing whether an alleged fraudulent representation should be considered 'collateral or extraneous to the contract,' 'as a matter of both logic and law, the primary consideration ... is whether the contract itself speaks to the issue.'" *Kriegel,* 2014 WL 2936000, at \*14 (quoting *Great Earth Int'l Franchising Corp. v. Milks Dev.,* 311 F.Supp.2d 419, 426–27 (S.D.N.Y.2004)). In so doing, courts look to "whether the alleged misrepresentation was warrantied or not mentioned by the contract; whether it was the misstatement of a present fact which induced entry into the contract; whether it constituted the failure to perform a duty specified in the contract; and whether it is generally duplicative of the breach of contract claim." *Great Earth Int'l,* 311 F.Supp.2d at 428; *see also Kriegel,* 2014 WL 2936000, at \*14 (same). Defendant claims that Plaintiffs' proposed fraud claim is duplicative of Plaintiffs' breach-of-contract claim. (Def.'s Mem. 10 ("Plaintiff are attempting to recast their breach of contract claim as one for fraud.").) The Court agrees.

Plaintiffs have failed to plead a fraud claim that is independent of their breach-of-contract claim. *See Esposito v. Ocean Harbor Cas. Ins. Co.,* No. 13–CV–7073, 2013 WL 6835194, at \*2 (E.D.N.Y. Dec. 19, 2013) ("Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court ... is to identify a tort independent of the contract." (internal quotation marks omitted) (citing *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 767 (1995))); *Neff v. Auto. Ins. Co. of Hartford,* No. 08–CV–8532, 2009 WL 435297, at \*2 (S.D.N.Y. Feb. 22, 2009) (same). In particular, Plaintiffs allege no legal duty that Defendants owe to Plaintiffs apart from those alleged to exist under the Policy. *See Cross v. State Farm Ins. Co.,* No. 10–CV–1179, 2011 WL 4916534, at \*4 (N.D.N.Y. Oct. 17, 2011) (holding that "to the extent the claim is based on [the defendant insurance company's] failure to abide by the terms of the insurance contract, the claim cannot stand independent of the breach of contract claim"); *Neff,* 2009 WL 435297, at \*2 (noting that, for a tort claim to exist along side a contract claim under New York law, the "tort obligation [must be] apart from and independent of promises made and therefore apart from the manifested intention of the parties to a contract" (internal quotation marks omitted)). Indeed, Plaintiffs have not alleged that they would have any claim against Defendant in the absence of the insurance policy. *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.,* 949 F.Supp.2d 486, 505 (S.D.N.Y.2013) ("New York law makes clear that the allegedly

---

for each of their claims is identical for all three of Plaintiffs' claims and does not articulate distinct damages that resulted from the fraud alleged. Specifically, Plaintiffs request "the amount of full insurance coverage under the Insurance Policy, plus additional costs of damages to the Properties caused by delay in repairs, the amount of profits Plaintiffs would have procured by renting the Properties, and the overall cost of the Properties lost to fore-

closure, in the amount to be determined at trial, at least $100,000,000.00." (*Compare* Am. Compl. ¶ 59(a), *with id.* ¶ 59(c).) Put another way, Plaintiffs are electing to vindicate what they believe, through assignment, are their contract rights to the claims under the Policy. This is therefore the only legal duty Defendant could owe Plaintiffs under this theory.

tortuous conduct must be such that there would be liability even if no contract existed." (internal quotation marks omitted)).

Plaintiffs claim that Defendant told Plaintiffs "in several communications ... that in order to pay the claim under the insurance policy, Plaintiff[s] would have to provide an "assignment of liquidated claim," despite the fact that Defendant knew that the claims has been assigned to Plaintiffs and that proof of assignment was not required under the policy. (Am. Compl. ¶¶ 55–56.) Through these statements, "Defendant implied the missing 'assignment' was the necessary missing link that prevented Defendant from paying the claim." (*Id.* ¶ 42.) At best, however, these statements relate to Defendant's promise to perform under the terms of the already-existing insurance contract, provided that Plaintiffs demonstrate that they were actually assigned Green Realty's rights under the policy. It is not fraud. *See Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 401 (2d Cir.2001) (holding that a representation that "is merely a statement of intent to perform under the contract[ ] cannot constitute fraud"); *Bridgestone*, 98 F.3d at 19–20 (dismissing fraud claim where the alleged misrepresentations "amount[ed] to little more than intentionally-false statements ... indicating [the defendant's] intent to perform under the contract"); *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12–CV–6017, 2013 WL 342922, at *3 (S.D.N.Y. Jan. 18, 2013) ("A fraud claim that merely alleges that intentionally false statements were made by a party indicating his intent to perform under a particular contract is duplicative of the underlying breach of contract claim ... and must be dismissed as a matter of law." (internal quotation marks omitted) (citing *Bridgestone*, 98 F.3d at 19)).

Even assuming Plaintiffs' allegations are true, Defendant's requirement that Plaintiffs demonstrate that policy had been assigned to them is tethered to the contract. Rather than creating an "additional and collateral requirement" for Plaintiffs in order to trigger Defendant's contract performance, (Pls.' Mem. 7), Defendant's requests simply sought to determine whether Defendant had any obligation to Plaintiffs under the Policy. Plaintiffs maintain that the Policy makes no mention of the proof required to demonstrate an assignee's right to file a claim, (*see* Brehony Decl. Ex. A), and that Defendant's insistence that Plaintiffs provide "documentation setting forth an assignment of the insurance claim," (Brehony Decl. Ex. C, at 2), was a duplicitous attempt to avoid paying the claim. However, while the provision of the Sales Agreement upon which Plaintiffs rely requires the "seller *shall assign* to [TN Metro]" the right to make a claim "under the casualty insurance policies," (Am. Compl. ¶ 38), the agreement itself does not demonstrate that any such assignment actually occurred. But, it is elementary that in any contract, performance is required only to benefit either other parties to the contract, or their assignees or beneficiaries. *See Harte v. Ocwen Fin. Corp.*, No. 13–CV–5410, 2014 WL 4677120, *5 (E.D.N.Y. Sept. 19, 2014) ("It is hornbook law that a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."). Thus, the absence of any provision in the policy limiting Defendant's obligations only to the insured or its assignees is of no moment. In any event, this allegedly fraudulent conduct is not independent of Plaintiffs' breach-of-contract claim. *See Neff*, 2009 WL 435297, at *2; *Sichel*, 230 F.Supp.2d at 329 (granting the defendants' motion to dismiss a claim of fraud on grounds that the plaintiff failed to allege a tort independent of his contract claim,

where the plaintiff alleged that the defendants conspired to frustrate his insurance claim).

■ Furthermore, to the extent that Plaintiffs allege that Defendant acted in bad faith with respect to assessing and denying Plaintiffs' claim, such actions cannot provide grounds for an independent tort claim under New York law. *See Cross*, 2011 WL 4916534, at *5 (noting that "in New York there is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance contract" and finding that the plaintiff's use of "familiar tort language" to support his independent tort claim ... does not transform the breach of contract claim into an independent tort claim" (alterations, citations, and internal quotation marks omitted)); *Neff*, 2009 WL 435297, at *3 (noting that "[t]o the extent that plaintiff alleges that defendants engaged in a 'sham' investigation[,] ... those allegations merely evidence plaintiff's dissatisfaction with defendants' performance of the contract obligations," and that such an "allegation does not state a tort claim, it merely raises a question for the fact finder determining the breach of contract claim"); *Brown v. Paul Revere Life Ins. Co.*, No. 00–CV9110, 2001 WL 1230528, at *4 (S.D.N.Y. Oct. 16, 2001) (noting that allegations "that defendant breached its contract intentionally, pursuant to an alleged policy of breaking disability insurance contracts in order to avoid the payment of full benefits ... do not allege a tort independent of the contract"); *Royal Indem. Co. v. Salomon Smith Barney, Inc.*, 308 A.D.2d 349, 764 N.Y.S.2d 187, 188 (2003) ("Allegations that an insurer had no good faith basis for denying coverage are redundant to a cause of action for breach of contract based on the denial of coverage, and do not give rise to an independent tort

cause of action, regardless of the insertion of tort language into the pleading.").

At most, Plaintiffs have pled that Defendant's allegedly fraudulent statements dissuaded Plaintiffs from filing suit for breach of contract until after the expiration of the statute of limitations provided by the contract, thereby foreclosing Plaintiffs' remedy for Defendant's breach. (*See* Am. Compl. ¶¶ 57–58; (Pls.' Reply Mem. 4 (claiming that Defendant's representations "led TN Metro to forgo suing Commonwealth in a timely manner")).) This is further supported by the fact that the only harm that Plaintiffs allege apart from Defendant's nonperformance under the contract is that "Plaintiff[s] relied on Defendant's misrepresentation and therefore did not pursue a suit against Defendant within the contractual limitations" and were "further estopped from bringing a timely suit against Defendant due to a contractual statute of limitations bar." (Am. Compl. ¶¶ 58–59.) These allegations will undoubtably be the subject of future motion practice in this case, but the Court need not address these issues here.

As Plaintiffs have failed to allege a tort claim that is independent of the contract action already pled in this case, their Motion To Amend is denied.

## III. CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion To Amend is denied. The Clerk of the Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 41.)

SO ORDERED.