**REGENCY COMMUNICATIONS INC., Mark Parrella, and Actel Inc., Plaintiffs,**

v.

**CLEARTEL COMMUNICATIONS INC., Ulysses G. Auger II, Barton R. Groh, and, Stephen Roberts, Defendants.**

No. Civ.A. 98–1160(RCL).

United States District Court, District of Columbia.

July 30, 2001.

Henry Streeter, Barnes & Thornburg, Washington, D.C., for plaintiffs.

John Joseph Brennan, III, Vernon Webster Johnson, III, Jackson & Campbell, P.C., Washington, D.C., for defendants.

## MEMORANDUM OPINION

LAMBERTH, district Judge.

Now before the Court are numerous dispositive motions. The underlying dispute concerns the defendants' provision of

long distance phone service to the plaintiffs' pay phones. The plaintiffs allege that the defendants' behavior in the provision of long distance services gives rise to claims for fraud, breach of contract, and civil RICO. The defendants counter that the plaintiffs conspired to violate and did in fact violate non-disclosure clauses in the phone service contracts.

After a full review of the parties' pleadings and memoranda, the applicable law, and for the following reasons, the holds the following:

With respect to the breach of contract issue, the Court GRANTS the plaintiffs' motion for summary judgement with respect to Cleartel and DENIES the defendants' motion for summary judgment with respect to Cleartel. Further, the Court DENIES the plaintiffs' motion for summary judgment with respect to Mark Parrella, and correspondingly GRANTS the defendants' motion with respect to the individually-named defendants.

With respect to the fraud issue, the Court DENIES the plaintiffs' motion for summary judgment and GRANTS the defendants' motion for summary judgment.

With respect to the RICO issue, the Court DENIES the defendants' motion for summary judgment.

With respect to the defendants' counterclaims, the Court GRANTS the plaintiffs' motion for summary judgment.

## I. BACKGROUND

### A. Regency, Actel, Cleartel, and the Contracts for Long Distance Service

Regency Communications [1] owns pay telephones in the state of New Jersey. In

---

1. Actel, Inc. is a co-plaintiff in this suit and is similarly situated to Regency in all material respects. Mark Parrella, the president and

sole shareholder of Regency Communications, is also a co-plaintiff in this suit. For ease of reference in this section, the Court

order to make a long distance call from a pay phone, the phone must be equipped with long distance service. Cleartel Communications sells long distance phone services. Long distance phone services, of course, are not consumable by the general public without a phone. Thus, each party desiring the services of the other, Regency and Cleartel entered into several contracts throughout the 1990s.[2]

At issue in the instant case are the compensation terms of the parties' contracts. Regency's compensation was a specified portion of "all call charges ... captured, billed, and collected by Cleartel" for each long distance call. Contract, § 2.1. Long distance charges generally are of two types, the "tariff charges" and "location surcharges." The tariff charge is the amount charged to actually transmit the phonecall, and the location surcharge is any regulatory fee applicable to the pay phone being used. Under the Regency/Cleartel contracts, Regency was to be paid approximately 50% of each call's tariff charge, and 100% of any location surcharge. For example, a long distance call with tariff charges of $3.00 and a surcharge of $1.00 would result in a total payment to Cleartel of $4.00. Cleartel would then pay Regency approximately $2.50 (50% of the tariff charges and 100% of the surcharge).

Because Regency's revenue under the agreement was tied to the charges for each phonecall, the contracts required Cleartel to "provide [Regency with] a summary of gross long distance calls, minutes, and charges by originating phone number." Contract § 2.4.

---

often refers to the plaintiffs collectively as "Regency."

**2.** More specifically, the parties entered into four separate contracts. The Contracts were,

## B. Mr. Parrella's Phonecall and the Ensuing Investigation

In August 1996, Regency president Mark Parrella made a long distance phone call from a Regency-owned pay phone. Cleartel billed Mr. Parrella $ 6.72 for the personal phonecall. When, pursuant to section 2.4 of the applicable contract, Cleartel provided Regency with a "summary of gross long distance calls, minutes, and charges by originating phone number," Regency discovered that Cleartel recorded the charge for Mr. Parrella's phonecall as $6.22. As such, Regency's compensation from Cleartel would be based on an amount $.50 less than the amount actually charged.

Based on this event, a broader investigation into Cleartel's billing and payment practices was undertaken. On July 16, 1998, Arthur Cooper, president of co-plaintiff Actel, Inc., had 21 phonecalls placed from 21 separate pay phones owned by Actel and served by Cleartel. When Actel compared the end-user charge to Cleartel's reported charge, Actel discovered that Cleartel was consistently charging the end-user $.60–$1.00 more than was reported to Actel. This meant that Cleartel's payments to Actel would based on an amount lower than actually charged.

## C. Regency's Allegations, Cleartel's Counterclaims, and the Instant Motions

Based on the foregoing events, Regency makes four separate allegations: (1) Cleartel breached the long distance phone service contracts, (2) Cleartel defrauded Regency, (3) Cleartel violated section 1962(c) of the Racketeer Influenced and Corrupt

---

for the most part, identically organized, and contained identical terms. *See* Exhibits to Plaintiffs' Motion for Summary Judgment, November 13, 2000.

Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and (4) Cleartel violated section 1962(d) of RICO, 18 U.S.C. § 1962(d).

Also based on the foregoing events, Cleartel makes two counterclaims: (1) Regency breached the long distance service contracts by violating the nondisclosure clauses therein, and (2) Regency and its co-defendants conspired to violate the nondisclosure clause of the contracts.

Each side has made dispositive motions. Regency moves for summary judgement on two of its own allegations: the breach of contract claim and the fraud claim. Regency also moves for summary judgment on both of Cleartel's counterclaims: the breach of contract claim and the civil conspiracy claim. Cleartel moves for judgment on the pleadings, or in the alternative, for summary judgment on Regency's breach of contract, fraud, and RICO claims.

Thus, the Court faces four separate issues: the cross dispositive motions on (1) Regency's breach of contract claim, (2) Regency's fraud claim, and (3) Regency's RICO claims; as well as Regency's dispositive motions on (4) Cleartel's counterclaims. The Court now considers these issues.

## II.  ANALYSIS

### A.  Jurisdiction and Choice of Law

The Court has jurisdiction over the plaintiffs' claims and the defendants' counterclaims pursuant to 28 U.S.C. § 1332. Each plaintiff is a citizen of a state other than states in which the defendants are citizens. As well, the amount in controversy exceeds $75,000. The Court also has jurisdiction over the plaintiffs' RICO claims pursuant to 28 U.S.C. § 1331. All contracts in question in this case contain a choice of law provision designating the law of the District of Columbia as the law applicable to all disputes over the contract. To the extent the dispute presents a federal question, the Court will apply federal law.

### B.  Standard of Review

All of the motions now before the Court are, in effect, summary judgment motions.[3] Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To survive a motion for summary judgment, the nonmovant must make a "sufficient showing to establish the existence of an element essential to that party's case." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. A "sufficient showing" exists when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### C.  The Plaintiffs' Breach of Contract Claim

#### 1.  The Plaintiffs' Motion for Summary Judgment

■ There is no dispute of material fact as to the actions each party performed

---

**3.** Although the defendants move for "judgment on the pleadings, or in the alternative, for summary judgment", a judgment on the pleadings is only semantically distinguishable from a motion for summary judgment. *See*

Kevin Clermont, Civil Procedure 88 (2d ed.1988). Thus, the Court treats the defendants' motion as a motion for summary judgment.

under the four contracts. Cleartel readily admits that (1) the commission paid to Regency and Actel was based on amounts less than actually charged to the end user, and (2) it charged the end user more than it reported to Regency and Actel.

The Court finds that the contract is unambiguous and that Cleartel violated the four contracts in two ways. First, basing Regency and Actel's commission payments on amounts less than actually charged to the end user is a violation of section 2.1. Section 2.1 required Regency and Actel's compensation to be based on "all call charges ... captured, billed, and collected by Cleartel." By paying Regency and Actel a specified percentage of $6.22, for example, instead of $6.72, Cleartel did not pay Regency and Actel a percentage of "all charges."

Second, reporting call charges to Regency and Actel which were less than what was actually charged violated section 2.4. Section 2.4 required Cleartel to "provide [Regency with] a summary of gross long distance calls, minutes, and charges by originating phone number." By reporting $6.22 to Regency, for example, but charging the end-user (Mr. Parrella) $6.72, Cleartel failed to provide a complete summary of the "charges" for each phonecall.

In making this conclusion, the Court necessarily rejects several of Cleartel's arguments. First, the Court rejects the argument that Cleartel's behavior is sanctioned by section 2.3 of the contracts. Section 2.3 addresses the high incidence of unpaid bills by end users in the long distance call market. Although the contracts accounted for a certain amount of unpaid bills—known as "uncollectibles", section 2.3 addressed the possibility that uncollectibles may increase at any given point. Thus, if the uncollectibles were to unex-pectedly rise, Cleartel had the "right to charge Customer for their actual uncollectibles plus an allocation of unidentified uncollectibles not to exceed seven percent (7%) of Customer's total charges plus surcharges." Contract, § 2.3.

This argument is pierced at its core because it is an undisputed fact that, in referring to the "customer", the contract is referring to *Regency or Actel*, not the pay phone callers. Thus, section 2.3 does not grant Cleartel any right to increase the charges to end users. But even if it did, Cleartel would still have a duty under section 2.1 to pay Regency and Actel a commission based on "*all* call charges." (emphasis added). Further, Cleartel would still have a duty under section 2.4 to report to Regency and Actel "a summary of gross long distance ... charges."

Cleartel's second argument fails for the same reason. Cleartel argues that, even though the contracts did not affirmatively grant Cleartel "the right to charge end users for its uncollectibles, it is clear that none of the [contracts] prohibited Cleartel from charging the end users." *See* Brief for Cleartel, Dec. 4, 2000, at 8. This is a true statement; it is also an irrelevant one. As explained above, Cleartel's alleged right to charge the end user directly fails to relieve it of its duties to Regency and Actel under sections 2.1 and 2.4.

The Court therefore finds that summary judgment should be granted in favor of Regency and Actel against Cleartel. In ruling as such, the Court is careful to distinguish the companies and individual employees named in the suits. Mark Parrella, although president of Regency, was not personally bound by any of the long distance contracts. Thus, the plaintiffs' motion for summary judgment with respect to Mark Parrella on the breach of

contract claim is denied.[4] Similarly, Cleartel employees Ulysses G. Auger, Barton R. Groh, and Stephen Roberts were not personally bound by any of the long distance contracts. The plaintiffs' motion for summary judgment with respect to the individually named defendants is therefore denied. *See* Defendants' Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment, Nov. 13, 2000, Exhibit E (affidavits of Ulysses G. Auger, Barton R. Groh, and Stephen Roberts).

### 2. Cleartel's Motion for Summary Judgment

The foregoing consideration of the plaintiffs' motion for summary judgment on the breach of contract issue makes the ruling on this motion a foregone conclusion. As dictated by the above discussion, Cleartel's motion for summary judgment on this issue is denied with respect to Regency and Actel, and granted with respect to Mark Parrella, Ulysses G. Auger, Barton R. Groh, and Stephen Roberts. *See* Defendants' Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment, Nov. 13, 2000, Exhibit E (affidavits of Ulysses G. Auger, Barton R. Groh, and Stephen Roberts).

### D. The Plaintiffs' Fraud Claim

#### 1. The Plaintiffs' Motion for Summary Judgment

■ Using only a single paragraph, the plaintiffs "respectfully submit[ ]" that the defendants' breach of contract also gives rise to tort liability for fraud. Brief for Plaintiffs, Nov. 13, 2000, at 17. The Court finds that the common law fraud claim is duplicative of the contract claim, and therefore must be dismissed.

"There is virtually an endless stream of American cases from various appellate courts discussing the relationship of tort and breach of contract." 1 Stuart M. Speiser et al., The American Law of Torts § 1:20, at 65 (1983). A common formulation is as follows:

> The distinction between a claim *ex contractu* [in contract] and one *ex delicto* [in tort] is found in the nature of the grievance. Where the wrong results from a breach of a promise, the claim is *ex contractu.* However, if the wrong springs from a breach of a duty either growing out of the relationship of the parties, or imposed by law, the claim is *ex delicto.*

*Jefferson County v. Reach,* 368 So.2d 250, 252 (Ala.1978). While determining which of the two doctrines to apply is difficult enough, it is even more difficult to decipher when both doctrines apply; that is, when does a contractual relationship give rise to tort and contract liability.

In the field of fraud, the tort with which this Court is presented, there is a "general reluctance to allow a claim of fraud to proceed when 'the fraud contemplated by the plaintiff does not seem to be extraneous to the contract, but rather on the performance of the contract itself.' " *Triple Point Technology, Inc. v. D.N.L. Risk Management, Inc.,* 2000 WL 1236227, at *5 (D.N.J.2000) (basing its conclusion on a "survey of recent contract/fraud decisions by courts in other states") (quoting *Jewish Ctr. of Sussex Cty. v. Whale,* 86 N.J. 619, 432 A.2d 521 (1981)).

The most cogent formulation of when a fraud claim may proceed alongside a con-

---

4. It is unclear from the plaintiffs' complaint whether Mark Parrella, in his individual capacity, alleges a breach of contract. The Court, out of caution and completeness, addresses the issue as though the plaintiffs were moving for summary judgment with respect to Mr. Parrella as well.

tract claim was issued by the Second Circuit in 1996. In *Bridgestone/Firestone v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir.1996), the court stated three instances where a fraud claim may stand together with a breach of contract claim:

> To maintain a claim of fraud [in addition to a claim of breach of contract], a plaintiff must either:
>
> (i) demonstrate a legal duty separate from the duty to perform under the contract;
>
> (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or
>
> (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Bridgestone/Firestone,* 98 F.3d at 20. These factors have been utilized, whether in part or whole, by numerous courts throughout the country. *See, e.g., Nissho-Iwai Co., Ltd. v. Occidental Crude Sales,* 729 F.2d 1530, 1550 (5th Cir.1984) ("[The plaintiff] has cited no case, however, in which misrepresentations in the performance of a contract permitted a plaintiff to recover for fraud as well as breach of contract. Our own research has only turned up cases involving fraud in the inducement or inception of a contract rather than fraud in the performance."); *Papa's–June Music, Inc. v. McLean,* 921 F.Supp. 1154, 1161 (S.D.N.Y.1996) ("To maintain a claim for fraud, a plaintiff must allege ... a legal duty separate and apart from the contractual duty to perform.)"; *Erlich v. Menezes,* 21 Cal.4th 543, 87 Cal. Rptr.2d 886, 981 P.2d 978 (1999); *Just's Inc. v. Arrington Constr.,* 99 Idaho 462, 583 P.2d 997, 1003 (1978) ("A tort requires the wrongful invasion of an interest protected by the law, not merely an invasion of an interest created by the agreement of the parties."); *Sheppard v. Yara Engi-*

*neering Corp.* 248 Ga. 147, 281 S.E.2d 586 (1981); *Nelson v. Northwestern Savings & Loan Assoc.,* 146 Mich.App. 505, 381 N.W.2d 757 (1985); *see also* Keeton et al., Prosser and Keeton on Torts, § 92, at 657 (5th ed. 1984) ("There is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made.").

In the case at hand, the Court finds none of these circumstances present. First, Cleartel's duty to report and pay on "all charges" is a duty that arises specifically under the parties' contracts. There is no tort duty that requires this behavior. The contracts were negotiated and entered into at arms length, and as such, no fiduciary relationship arises. Of course, Cleartel had a duty to act in good faith, *see Paul v. Howard University,* 754 A.2d 297, 310 (D.C.2000), but this duty, being an implied term of the contract, is not "separate from the duty to perform under the contract." *Bridgestone/Firestone,* 98 F.3d at 20. To the contrary, it is one of Cleartel's contractual duties.

Second, the alleged fraudulent representation in this case is not "collateral or extraneous to the contract." *Bridgestone/Firestone,* 98 F.3d at 20. Cleartel's alleged withholding of information and funds is behavior directly related to the contract; in fact, it is the specific behavior the contract required of Cleartel.

Third, the Court finds that the plaintiffs are not seeking any "special damages ... that are unrecoverable as contract damages." *Bridgestone/Firestone,* 98 F.3d at 20. It might be argued that, since the plaintiffs' request "threefold their actual damages" in their prayer for relief, the plaintiffs are requesting such "special damages." The Court concludes otherwise. The plaintiffs' prayer for treble damages stems from their RICO claims,

which represent counts II and III of their complaint. To say that one is seeking "special damages ... that are unrecoverable as contract damages" merely because a separate count in a multi-count complaint prays for damages not available in a single-count contract action would be a formalistic and illogical reading of precedent. It is illogical to think that a plaintiff, by merely appending a RICO or other such claim to his complaint, may instantly render his fraud claim nonduplicative of the contract claim. It is much more logical to reason that a plaintiff seeks "special damages ... that are unrecoverable as contract damages" when the plaintiff can point to damages caused by the contract's breach that, under applicable contract law, would be nonrecoverable in a single-count contract action. The plaintiffs in the instant case point to no such damages.

Thus, to summarize, the Court finds that the plaintiffs' fraud claim fails as a matter of law. The claim is duplicative of the breach of contract claim. Even if the claim were not duplicative, however, the claim would still fail with respect to the individual parties. Mark Parrella, as an individual pay phone user, was not personally owed any duty by Cleartel. Similarly, Ulysses G. Auger, Barton R. Groh, and Stephen Roberts did not personally defraud Regency or Actel in any way. See Defendants' Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment, Nov. 13, 2000, Exhibit E (affidavits of Ulysses G. Auger, Barton R. Groh, and Stephen Roberts).

### 2. The Defendants' Motion for Summary Judgment

As the foregoing discussion suggests, the Court finds the defendants' motion for

summary judgment is merited. The fraud claim is duplicative of the breach of contract claim. Further, even if it were not, the plaintiffs' claims with respect to the individual parties must fail. There is insufficient evidence Mark Parrella was defrauded in his personal capacity, and insufficient evidence that Ulysses G. Auger, Barton R. Groh, and Stephen Roberts defrauded Regency and Actel in their personal capacity. See Defendants' Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment, Nov. 13, 2000, Exhibit E (affidavits of Ulysses G. Auger, Barton R. Groh, and Stephen Roberts).

### E. The Plaintiffs' RICO Claims

The plaintiffs claim that the defendants violated 18 U.S.C. §§ 1962(c) and 1962(d). The defendants move for summary judgment on several grounds. The Court rejects all of the defendants' arguments, and accordingly denies the defendants' motion.[5] Before explaining its reasoning, however, the Court first undertakes a sua sponte evaluation of whether the dismissal of the plaintiffs' fraud claim affects the viability of its RICO claims.

### 1. The Plaintiffs' RICO Claims in Light of the Dismissed Fraud Claim

The plaintiffs allege that the defendants' "pattern of racketeering activity" was made up of a series of mail frauds. Given the Court's dismissal of the plaintiff's common law fraud claim, it might be thought that the plaintiffs are without a fraudulent act necessary for their RICO claims. The Court finds otherwise.

---

**5.** As the Court denies the defendants' summary judgment motion on this issue, it also denies the defendants' motion to dismiss the plaintiffs' claim for attorneys' fees. See Brief for Defendants, Nov. 13, 2000, at 34. That claim was predicated on the RICO claim, and therefore may continue as the RICO claim continues.

In the RICO context, it is well-accepted that "the scope of fraud under [the wire and mail fraud] statutes is broader than common law fraud." *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786 (1st Cir.1990). It is also well-accepted that a simple breach of contract claim, uncolored by any acts of deception, does not constitute a mail fraud. *See* Gregory P. Joseph, Civil RICO, A Definitive Guide 86 (2d. ed. 2000) ("A simple breach of contract, breach of fiduciary duty, anticompetitive behavior, and even violation of statute do not constitute actionable wire or mail fraud, *unless the plaintiff has been deceived.*") (emphasis added); *see also Morda v. Klein*, 865 F.2d 782 (6th Cir.1989) ("[A] breach of fiduciary duty alone, *without the 'something more'* of fraudulent intent, cannot constitute mail fraud.") (emphasis added); *Hilton, Sea, Inc. v. DMR Yachts, Inc.* 750 F.Supp. 35 (D.Me.1990) ("A failure to perform [a contract] as promised does not, *without more,* constitute fraud.") (emphasis added). Thus, the touchstone question for the Court in this case is whether the defendants' breach of contract was accompanied by "*something more*" which amounted to deception.

The Court finds that enough evidence exists for a reasonable jury to find that the defendants utilized the mail to deceive the plaintiffs. There is credible evidence that the defendants, on successive occasions over a many year period, omitted material information from the reports submitted to the plaintiffs. Further evidence permits the reasonable inference that this omission enabled the defendants to withhold monies contractually due to the plaintiffs.

Thus, there is ample evidence to conclude that the defendants intended to take the plaintiffs' money by deception. As such, the dismissal of the plaintiffs' fraud claim does not require the dismissal of the plaintiffs' RICO claims.

## 2. The Defendants' Intended Target Argument

The defendants argue that the plaintiffs' RICO claims must fail because the plaintiffs were not the intended targets of the alleged racketeering activities. The Court disagrees.

To state a valid RICO claim, a plaintiff must allege, inter alia, two or more predicate acts that constitute a "pattern of racketeering activity." 18 U.S.C. § 1961. On its face, the RICO statute does not require proximate causation; that is, the statute does not expressly require the "predicate acts" designated in section 1961 to proximately cause the "injury" designated in section 1962. The United States Supreme Court, however, read such a clause into the statute in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

Since *Holmes*, lower courts have explored the nature of proximate causation in the RICO context. One factor that has emerged is the "target" requirement; that is, for proximate causation to exist, the plaintiff must have been the "intended target[ ] of the RICO violation." *In re American Express Co. Shareholder Litigation*, 39 F.3d 395, 400 (2d Cir.1994). *American Express* involved the repercussions of a scheme by American Express executives to defame one of its competitors. The scheme backfired, and eventually forced American Express to pay a $10 million settlement. Faced with a shareholders' derivative claim under RICO, the Second Circuit found causation lacking, explaining that

the shareholders of American Express were certainly not the intended targets of the RICO violations. Quite the con-

trary, the RICO violations were intended to benefit American Express by injuring one of its competitors.

*Id.* Since *American Express,* the "intended target" requirement has been repeatedly endorsed. *See Abrahams v. Young & Rubicam, Inc.,* 79 F.3d 234, 239 (2d Cir.1996); *Meng v. Schwartz,* 116 F.Supp.2d 92 (D.D.C.2000); *BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon,* 43 FSupp.2d 359, 366 (S.D.N.Y.1999); *Medgar Evers Houses Tenants Association v. Medgar Evers Houses Associates,* 25 F.Supp.2d 116, 122 (S.D.N.Y.1998).

■ In the instant case, the Court has little hesitation finding that Regency and Actel were the intended targets of the alleged RICO violations. Every dollar that Cleartel failed to pay to Regency and Actel under the contract was a dollar that Cleartel itself retained. Thus, Regency and Actel were directly affected by the alleged violation. Cleartel argues that, since the disputed charges were levied against the end users, not Regency and Actel, the targets of the charging scheme were the end users, not Regency and Actel. This argument entirely misses the point. By charging end users extra fees, and not reporting or paying on these fees, Cleartel was able to retain funds it would otherwise owe to Regency and Actel. Thus, Regency and Actel were the specific victims of Cleartel's conduct.

**3. The Defendants' Remaining RICO Arguments**

The defendants make several arguments, all of which the Court rejects. First, the defendants argue that the plaintiffs' second amended complaint characterizes Cleartel as both a "person" and an "enterprise." This, argues the defendants, violates Circuit precedent which holds that the same entity cannot simultaneously serve as a RICO defendant and a RICO enterprise. *See Confederate Memorial Association, Inc. v. Hines,* 995 F.2d 295, 300 (D.C.Cir.1993). Although the plaintiffs do allege in one place that "[e]ach of the defendants is a person within the meaning of 18 U.S.C. § 1961(3)", other portions of the complaint suggest that Cleartel is not alleged to be a person for purposes of RICO liability. *See* Complaint, Sept. 25, 1998, at ¶ 43. For instance, paragraph 44 begins by alleging Cleartel to be an "enterprise as defined in 18 U.S.C. § 1961(4)" and then separately refers to the "RICO defendants" as "Auger, Groh, and Roberts." See Second Amended Complaint, at ¶ 44. While the list of RICO defendants is not purported to be exhaustive, the Court finds that the best reading of the plaintiffs' complaint is that Cleartel is alleged to be an "enterprise", and not a RICO defendant with "person" status.

Second, the defendants argue that Cleartel, Regency, and Actel cannot be considered a single enterprise. This argument is irrelevant, as the plaintiffs' complaint clearly contemplates that Cleartel is an enterprise in its own capacity. *See* Second Amended Complaint ¶ 44 ("Cleartel, whether viewed as an isolated entity, or in conjunction with Actel and/or Regency, constitutes an 'enterprise' as defined 18 U.S.C. § 1961(4).").

Third, the defendants argue that the individually-named defendants do not constitute an "association-in-fact" enterprise. Assuming, without deciding, that this were true, it would not be fatal to the plaintiffs' case. The plaintiffs clearly have designated Cleartel as the "enterprise" for the purpose of RICO liability. It is thus irrelevant whether the individually-named defendants also constitute an enterprise.

■ Fourth, the defendants argue that the acts alleged by the plaintiffs do not constitute a "pattern of racketeering activity." 18 U.S.C. §§ 1962(c), 1962(d). In

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court explained the requirements for a showing of a "pattern of racketeering activity." First, a "plaintiff must show that the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. 2893 (emphasis in original). Predicate acts are "related" where the acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893. Continuity can be demonstrated either by "a closed period of repeated conduct" or "past conduct which by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. 2893.

The Court finds that the plaintiffs have adequately alleged a "pattern of racketeering activity." The plaintiffs allege that the defendants deceived them by withholding information and monies multiple times over a several year period. The alleged predicate acts all stemmed from identical long distance service contracts between the parties. As such, the predicate acts are clearly "related" and constitute a "closed period of repeated conduct." The defendants' motion on this issue is therefore denied.

■ Finally, the defendants argue that the plaintiffs have not sufficiently shown that the individually-named defendants "conspired" to deceive the plaintiffs, and therefore violated section 1962(d). To the extent the defendants challenge the face of the plaintiffs' complaint, the defendants' challenge must fail. The plaintiffs refer numerous times in the complaint to the conspiratorial behavior of the individually-named defendants. *See* Second Amended Complaint, Sept. 25, 1998, at ¶¶ 13, 16, 18,

44, 46, 53, 57. To the extent the defendants challenge the sufficiency of the plaintiffs' evidence for summary judgment purposes, the defendants' challenge must also fail. Numerous affidavits provide extensive information which would enable a jury to reasonably infer that the individually-named defendants conspired. *See* Affidavit of Mark Parrella, Nov. 13, 2000; Affidavit of Arthur Cooper, Nov. 13, 2000.

## F. The Plaintiffs' Motion for Summary Judgment on the Defendants' Counterclaims

The defendants make two counterclaims. First, they allege that the plaintiffs violated the non-disclosure requirements of the four long distance service contracts. Second, they allege that the plaintiffs committed civil conspiracy by conspiring to violate the non-disclosure requirements. The plaintiffs move for summary judgment on the counterclaims, and the Court grants that motion.

It is axiomatic that, in order to survive a motion for summary judgment, the non-moving parties must come forward with affidavits, depositions, answers to interrogatories, or admissions on file to make a "showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The defendants have come forward with nothing of the sort in response to the plaintiffs' motion for summary judgment. Without a sworn statement of some sort alleging that confidential information was inappropriately shared, the plaintiffs' motion should be granted. Accordingly, the plaintiffs' motion for summary judgment on the conspiracy charge is also granted.

## III. CONCLUSION

Today, the Court rules on a multitude of motions. First, on the breach of contract

issue, the Court GRANTS the plaintiffs' motion for summary judgement with respect to Cleartel; and accordingly DENIES the defendants' motion with respect to Cleartel. However, the Court DENIES the plaintiffs' motion for summary judgment with respect to Mark Parrella, and correspondingly GRANTS the defendants' motion with respect to the individually-named defendants.

Second, on the fraud issue, the Court DENIES the plaintiffs' motion for summary judgment and GRANTS the defendants' motion for summary judgment.

Third, on the RICO issue, the Court DENIES the defendants' motion for summary judgement.

Fourth, on the defendants' counterclaims, the Court GRANTS the plaintiffs' motion for summary judgment.

Thus, the majority of claims in this case have been herein resolved. The RICO claims and the damages for breach of contract, however, remain for further disposition.

A separate order consistent with this Opinion shall issue this date.