REGENCY COMMUNICATIONS, INC.,
and Actel, Inc., Plaintiffs,

v.

CLEARTEL COMMUNICATIONS,
INC., Ulysses G. Auger II, Barton R.
Groh, and, Stephen Roberts, Defendants.

No. Civ.A. 98–1160(RCL).

United States District Court,
District of Columbia.

June 26, 2002.

Richard Henry Streeter, Barnes & Thornburg, Washington, DC, for plaintiffs.

John Joseph Brennan, III, Jackson & Campbell, P.C., Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Now before the Court is defendants' motion for reconsideration of the Court's July 30, 2001 holding granting plaintiffs' motion for partial summary judgment with respect to the breach of contract claim and its impact on plaintiffs' civil RICO claims. *Regency Communications, Inc. v. Cleartel Communications, Inc.*, 160 F.Supp.2d 36, 36 (D.D.C.2001). After careful review of the motion, the opposition thereto, and the applicable law, the Court DENIES defendants' motion for reconsideration with respect to both the contract issue and plaintiffs' civil RICO claims.

## I. BACKGROUND

### A. FACTS

Both Regency Communications, Inc., and Actel Communications, Inc., ("plaintiffs") own pay telephones in the state of New Jersey. In order to make long distance calls from a pay phone, the phone must be equipped with long distance service, which Cleartel Communications, Inc., ("Cleartel") provides. From 1990 through 1998, Cleartel entered into four written contracts with plaintiffs—one with Regency in 1996, and three with Actel in 1990, 1991, and 1998. *See* Attachments to Plaintiffs' Motion for Partial Summary Judg-ment, November 13, 2000. Cleartel agreed to pay plaintiffs a specified commission on "all charges ... captured, billed, and collected by Cleartel" for each long distance call. Contract § 2.1.

In addition, Cleartel agreed to provide plaintiffs with "a summary of gross long distance calls, minutes, and charges by originating phone number"—charges upon which the commission was to be based. Contract § 2.4. In exchange for this compensation, Cleartel became the sole long distance service provider at pay phones owned by plaintiffs. Cleartel's 1998 contract with Actel, however, expressly voided all previous contracts between the two companies, making the 1996 Regency contract, and the 1998 Actel contract, the pertinent contracts in this case. Contract February 1, 1998, § 4.16. The two contracts were, for the most part, identically organized, and contained identical terms. *See* Attachments to Plaintiffs' Motion for Partial Summary Judgment.

In August 1996, a few months after executing the contract with Cleartel, Regency president Mark Parrella made a long distance phone call from a Regency-owned pay phone. Mr. Parrella was an "end user" in this instance, that is, anyone who uses the phones for which Cleartel provides long distance service. Cleartel billed Mr. Parrella $6.72 for the personal phone call but recorded the charge for his phone call as $6.22 on the commission statement sent to Regency. Regency's compensation, therefore, would be based on an amount $.50 less than the amount actually charged. On July 16, 1998, several months after the most recent contract between *Actel and Cleartel was executed*, Actel's president, Arthur Cooper, had twenty-one calls placed from twenty-one separate Actel payphones. Actel discovered that Cleartel consistently charged the end-user $.60–$1.00 more than was reported on Ac-

tel's commission statements. This meant Cleartel's payments to Actel would be based on an amount lower than the amount actually charged.

## B. PROCEDURAL HISTORY

Plaintiffs filed suit against Cleartel and several of its officers for 1)breach of contract, 2)fraud, and 3)civil RICO violations. *Regency Communications, Inc.,* 160 F.Supp.2d at 36. Defendants filed counterclaims against plaintiffs and several of their officers for conspiring to violate, and actually violating, the non-disclosure requirements of the contracts. *Id.* The Court granted plaintiffs' motion for partial summary judgment on the breach of contract claim with respect to Cleartel, but denied their motion with respect to the individually named defendants. *Id.,* at 41. Specifically, with respect to the breach of contract claim, the Court found the contracts at issue to be unambiguous, and that Cleartel's failure to compensate or provide a report to plaintiffs based on *all charges* imposed by Cleartel violated sections 2.1 through 2.4 of the pertinent contracts. *Id.* The Court also granted plaintiffs' motion for partial summary judgment on defendants' counterclaims. *Id.,* at 46.

On plaintiffs' claim of fraud against the individually named defendants, the Court granted defendants' motion for summary judgment, finding that defendants could not be held liable as individuals for fraud based on their company's actions. *Id.,* at 43. With respect to plaintiffs' RICO claims, the Court denied defendants' motion for summary judgment, allowing plaintiffs to proceed with their claims against the individually named defendants. *Id.* Before the Court is defendants' motion for reconsideration on the granting of partial summary judgment to plaintiffs on the breach of contract claim, and the willingness of the Court to consider plaintiffs' RICO claims.

## II. ANALYSIS

## A. STANDARD OF REVIEW

■ A trial court has broad discretion to grant or deny a motion for reconsideration and will revise its decision only if it finds "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or manifest injustice." *Dyson,* 129 F.Supp.2d at 23. *See also Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir. 1996); *EEOC v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir.1997); *McDonnell Douglas Corp. v. Nasa,* 109 F.Supp.2d 27, 28 (D.D.C.2000). At issue in the instant case is whether the Court's interpretation of the compensation terms of the parties' contracts constituted a "clear error or manifest injustice." *Dyson v. Winfield,* 129 F.Supp.2d 22, 23 (D.D.C.2001).

## B. BREACH OF CONTRACT CLAIM

■ Whether or not provisions of a contract are ambiguous is a question of law to be determined by the Court, and a contract "is not ambiguous merely because the parties to a contract later disagree on its meaning." *Kass v. William Norwitz Co.,* 509 F.Supp. 618, 623 (D.D.C.1980) (citing *Clayman v. Goodman Properties, Inc.,* 518 F.2d 1026, 1030 (D.C.Cir.1973)). The Court views the contracts as unambiguous and finds Cleartel in breach for violating sections 2.1 through 2.4. Cleartel based plaintiffs' commission payments on amounts less than what was actually charged to the end user. This contradicts the plain language of section 2.1, which states that compensation is to be based on *"all call charges ... captured, billed, and collected by Cleartel."* Contract § 2.1 (emphasis added).

Cleartel correctly notes that section 2.1 applies to the call charges "as defined in Schedule A attached hereto and made a part of this Agreement." Contract § 2.1.

Since the uncollectible cost recovery surcharge (UCRS) that Cleartel charged end users is not listed in Schedule A, Cleartel argues that it was not a factor in compensating plaintiffs. Even if section 2.1 referred to only those charges listed in Schedule A, sections 2.2 and 2.3 define the type of charges upon which plaintiffs' commission would be based. The UCRS is a surcharge that sections 2.2 and 2.3 permit Cleartel to charge the Customer/plaintiffs, provided the commission paid to plaintiffs would be based on the "gross number of calls and gross dollar amount of charges billed by Cleartel ..." Contract § 2.3. Regardless of whether the UCRS was listed in Schedule A, it was a component of the "gross dollar amount of charges billed by Cleartel," and should have been incorporated into the commission paid to plaintiffs. Contract § 2.3. By not basing plaintiffs' compensation on the total amount of charges, Cleartel breached its contracts.

 Cleartel further contends that section 2.2 explicitly grants them the right to levy the UCRS against end users. This reading of the contracts is not plausible. The pertinent language in section 2.2 is that "Cleartel also reserves the right to implement an uncollectible cost recovery surcharge (UCRS) to recover actual uncollectible amounts in excess of the Uncollectible Allocation *described in Section 2.3.*" Contract § 2.2 (emphasis added). The contracts, however, must be read as a whole, and should be construed against the drafter-Cleartel in this case. *Kass v. William Norwitz Co.*, 509 F.Supp. at 624. Nowhere do the contracts mention end users, and section 2.2 is to be read in conjunction with section 2.3, which specifically refers to charges Cleartel is authorized to place on the *Customer* —whom both contracts define as plaintiffs. Section 2.3 states that "Cleartel also reserves the right to charge *Customer* for its *uncollectibles* plus an allocation of unidentified uncollectible, or any cost associated with bill-

ing inquiry." Contract § 2.3 (emphasis added). The UCRS is an uncollectible charge and Cleartel, therefore, may have a right to charge the UCRS, but only to plaintiffs.

Regardless of the referral to Schedule A and mention of the UCRS in sections 2.1 and 2.2, Cleartel failed to report the UCRS charges to Plaintiffs on mailed commission statements. Section 2.4 explicitly requires Cleartel to "provide [plaintiffs with] ... a summary of gross long distance calls, minutes, and charges by originating phone number." Contract § 2.4. Cleartel's failure to inform Plaintiffs of the additional charge violated the plain language of section 2.4. While Cleartel may argue that the charges that must be included in the report refers only to those listed in Schedule A, the language of section 2.4 does not support this view.

## C. RICO CLAIM

Plaintiffs claim that defendants violated 18 U.S.C. §§ 1962(c) and 1962(d). To state a valid RICO claim, plaintiffs must allege, inter alia, two or more "predicate acts" that constitute a "pattern of racketeering activity." 18 U.S.C. § 1961 (2000). Several courts have interpreted the RICO statutes to require proximate causation between the "predicate acts" in § 1961, and the injury designated in § 1962, so that the plaintiff must be the "intended target" of defendant's RICO violation. *Homes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *W. Associates Ltd. P'ship v. Mkt. Square Associates, et al.*, 235 F.3d 629, 633 (D.C.Cir. 2001); *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir.1994).

 In this case, the Court finds that plaintiffs could be viewed as the intended targets of the alleged RICO violations because charging the UCRS to end users allowed Cleartel to retain money that oth-

erwise would've been owed to plaintiffs. Moreover, the events in question show a "pattern of racketeering activity" despite Cleartel's contentions to the contrary. 18 U.S.C. § 1962(c) (2000). Cleartel utilized the mail continuously for several years to withhold information and monies, and a reasonable jury could infer this "closed period of repeated conduct" amounted to the deception necessary for a valid RICO claim. *W. Associates Ltd. P'ship*, 235 F.3d at 633. Cleartel argues that they did not "conspire" to deceive plaintiffs in violation of 18 U.S.C. § 1962(d), yet Cleartel concedes that they intended to impose the UCRS on end users, and they did so through the mail with billing statements. *See* Groh Letter in Plaintiffs Motion for Partial Summary Judgment. Cleartel argues that it relied on the contract in believing that charging the UCRS to end users did not violate any of the contract's provisions. In addition, Cleartel contends that it did not have to base payments to plaintiffs on the surcharge, or include in the statement to plaintiffs any mention of the surcharge, and therefore did not intentionally deceive them. The Court, however, believes that a reasonable jury could find that defendants deceived plaintiffs by intentionally excluding the UCRS from the billing statements, and in calculating the proper commission owed to plaintiffs.

### III. CONCLUSION

There has been no "change in the controlling law," no new evidence has been presented by defendants in this motion, and no "clear error" or "manifest injustice" occurred in awarding plaintiffs summary judgment on the breach of contract claim. *Dyson*, 129 F.Supp.2d at 23. Having found defendants in breach of contract, the Court has little trouble in allowing plaintiffs to bring a RICO claim since defendants intentionally imposed the additional charge, without informing plaintiffs, over a period of several years. The Court

accordingly DENIES defendants' motion for reconsideration.

A separate order consistent with this Opinion shall issue this date.