**WILD BUNCH, SA, Plaintiff,**

**v.**

**VENDIAN ENTERTAINMENT, LLC and Michael Bassick, Defendants.**

17 Civ. 1383 (JSR)

United States District Court, S.D. New York.

Signed June 25, 2017

Scott Jonathan Sholder, Cowan, De-Baets, Abrahams & Sheppard LLP, 41 Madison Avenue, 34th Floor, New York, NY 10010, (212)–974–7474, Fax: (212)–974–8474, Email: ssholder@cdas.com, Marissa Brooke Lewis, Cowan, DeBaets, Abrahams & Sheppard LLP, 41 Madison Avenue, 38th Floor, New York, NY 10010, (212) 974–7474, Fax: (212) 974–8474, Email: mlewis@cdas.com, for Plaintiff.

Barry E. Mallen, Loeb & Loeb LLP (CA), 10100 Santa Monica Blvd., Suite 2200, Los Angeles, CA 90067, (310)–282–2000, Email: bmallen@loeb.com, Donald A. Miller, Loeb & Loeb LLP (CA), 10100 Santa Monica Blvd., Suite 2200, Los Angeles, CA 90067, (310) 282–2312, Fax: (310) 282–2200, Email: dmiller@loeb.com, Jonathan Neil Strauss, Loeb & Loeb LLP, 345 Park Avenue, New York, NY 10154, (212)407–4000 x4089, Fax: (212)407–4900, Email: jstrauss@loeb.com, for Defendants.

## MEMORANDUM

### JED S. RAKOFF, U.S.D.J.

In this action, Wild Bunch, SA ("Wild Bunch") claims that defendants Vendian Entertainment, LLC ("Vendian") and Michael Bassick (Vendian's president) duped it into entering a cluster of financing contracts for the movie "Snowden" in reliance on defendants' representations that they could and would provide Wild Bunch with $3 million of the financing. On this basis, Wild Bunch alleges both a breach of contract claim and two fraud claims. By "bottom-line" order dated June 9, 2017, the Court denied defendants' joint motion to dismiss Wild Bunch's fraud claims. See Order dated June 9, 2017, ECF No. 27. This Memorandum explains the reasons for those rulings.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In reviewing a motion to dismiss, the Court "accept[s] the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." Brown

Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 156–57 (2d Cir. 2017).

The pertinent allegations are as follows. Wild Bunch is a film distribution company headquartered in Paris, France. Amended Complaint ("Am. Compl."), ECF No. 19, ¶ 9. Vendian, which is based in New York, finances and produces films. Id. ¶ 10. Michael Bassick is Vendian's president. Id. ¶ 11.

In 2014, Wild Bunch sought to gain an interest in the forthcoming movie "Snowden" (also sometimes referred to as "the Picture") by, inter alia, seeking to arrange so-called "gap financing" for the movie. Id. ¶ 12. To this end, in mid-2014,[1] Wild Bunch principal Vincent Maraval began discussing with Michael Bassick and non-party Christopher Woodrow (Vendian's CEO at the time) the possibility that Vendian would provide Wild Bunch with up to $3 million for the gap financing, which would be drawn on only if there were financing shortfalls. Id. ¶¶ 12–13, 16. Maraval told Vendian that Wild Bunch would only work with Vendian if Vendian itself had sufficient funds and ability to provide the gap financing if called upon to do so. Id. ¶¶ 14. Woodrow and Bassick repeatedly represented that Vendian already had the ability to provide such financing without further approvals or contingencies. Id. ¶¶ 15–16. These statements, and later ones like it, were allegedly false because, in fact, non-party John Bassick (Michael Bassick's father) was the undisclosed source of Vendian's funds and Vendian's independent ability to fund its contractual commitments was entirely contingent on John Bassick's unilateral, after-the-fact approval of Vendian's commitments, a fact not disclosed to plaintiff. Id. ¶¶ 24, 42., 67. In other words, Vendian, contrary to the representations of Michael Bassick and his associates, had no actual funds to help finance the Picture at the time.

On November 3, 2014, Woodrow sent an email to Wild Bunch stating, inter alia, "Lets [sic] offer to gap $0–3 million for principal plus 20%." See Ex. 2 to Am. Compl. (the "November 2014 Email"); Am. Compl. ¶ 17. In February 2015, Wild Bunch, allegedly relying on the November 2014 Email and Vendian's oral assurances of its ability and intent to enter the gap financing contract without further contingencies, entered into a Sales Agency Agreement (the "SAA") with non-party production company Sacha, Inc. ("Sacha") in which Wild Bunch agreed to provide $13 million in financing for "Snowden" in exchange for certain rights to distribute the film. Am. Compl. ¶¶ 25–28. In doing so, and as intended by Vendian, Wild Bunch disclosed to Sacha Vendian's planned (but not yet finalized) role in providing up to $3 million in gap financing. Id. ¶¶ 19–21, 28.

In August 2015, Wild Bunch entered into an agreement with Vendian (the "2015 Agreement") in which Vendian agreed to set aside $3 million to fund "Snowden," in exchange for producer credits and the possibility of a $150,000 "kill fee." Id. ¶¶ 32–33. Vendian thereafter continued to represent to Wild Bunch that it was willing and able to fund its commitment. Id. ¶ 39. In early 2016, Wild Bunch told Vendian that the $3 million in gap financing was needed. Id. ¶ 40. On June 24, 2016, Vendian and

---

1. Defendants' request that the Court take judicial notice of the fact that Vendian was not formally organized until December 30, 2014 is denied for purposes of the instant motion, because the precise date has no bearing on any of the issues raised by the motion. See Request for Judicial Notice in Support of Defendants' Motion to Dismiss Count II (Fraudulent Concealment) and Count III (Fraudulent Inducement) of Plaintiff's Amended Complaint, ECF No. 25–1. The Amended Complaint adequately alleges that Michael Bassick and his associates acted under the name of Vendian at all times here relevant.

Wild Bunch entered into an agreement (the "2016 Contract") that superseded the 2015 Contract, in which Vendian promised to actually pay the $3 million. Id. ¶2; see also 2016 Contract, Ex. 1 to Am. Compl. To date Vendian has not paid the amount due, allegedly because John Bassick cut off its funding. See, e.g., Am. Compl. ¶¶ 54, 58, 66–67.

On February 24, 2017, Wild Bunch instituted the instant action, bringing a claim against Vendian of breach of contract (Count I) and claims of fraud (Count II) and fraudulent inducement (Count III) against both Vendian and Michael Bassick. See Complaint, ECF No. 1, ¶¶ 58–100. The fraud claims appear to differ in that Count II alleges that Wild Bunch was duped into entering the SAA (in which Wild Bunch committed to Sacha to invest $13 million in the Picture), whereas Count III alleges that Wild Bunch was duped into entering the 2015 Contract and the 2016 Contract (in which Vendian committed to Wild Bunch to invest up to $3 million in the Picture). See id. ¶¶ 80, 95. On April 6, 2017, defendants moved to dismiss the fraud claims. See Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, ECF No. 15. On April 21, 2017, Wild Bunch, in lieu of opposing the motion to dismiss, filed an amended complaint bringing the same claims as the original complaint. (Count II is now styled as a claim for "fraudulent concealment," but nothing turns on this new label.) See Am. Compl. ¶¶ 75–120.

On May 5, 2017, defendants moved to dismiss the fraud claims in the amended complaint. See Memorandum of Law in Support of Defendants' Motion to Dismiss Count II (Fraudulent Concealment) and Count III (Fraudulent Inducement) of Plaintiff's Amended Complaint ("Def. Mem."), ECF No. 21. On May 19, 2017, Wild Bunch filed answering papers. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Count II and Count III of the Amended Complaint ("Plf. Mem."), ECF No. 24. On May 26, 2017, defendants filed reply papers. See Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Count II (Fraudulent Concealment) and Count III (Fraudulent Inducement) of Plaintiff's Amended Complaint ("Def. Reply"), ECF No. 25. The Court heard oral argument on June 2, 2017, and, as noted, denied defendants' motion by bottom-line order on June 9, 2017.

 Defendants principally argue that Wild Bunch's fraud claims are impermissibly duplicative of its breach of contract claim. Under New York law,[2] "a misrepresentation [that] is merely a statement of intent to perform under the contract[ ] cannot constitute fraud ...." Manning v. Utils. Mut. Ins. Co., Inc., 254 F.3d 387, 401 (2d Cir. 2001). To maintain a fraud claim based on such misrepresentations, a plaintiff must do one of the following:

(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).

 As a threshold matter, defendants seek to dismiss as duplicative the fraud claims brought, not only against

---

**2.** The parties agree that New York law applies to Wild Bunch's fraud claims. See Def. Mem. at 1; Plf. Mem. at 9.

Vendian, but also against individual defendant Michael Bassick, Vendian's president, who was not a party to either contract. However, "a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable." Sun Prods. Corp. v. Bruch, 507 Fed.Appx. 46, 48 (2d Cir. 2013) (summary order) (emphasis in original) (quoting Richbell Info. Servs. v. Jupiter Partners, L.P., 309 A.D.2d 288, 765 N.Y.S.2d 575, 589 (1st Dep't 2003)). Thus, "a plaintiff who is induced to enter into a contract with a company due to fraudulent misrepresentations by that company's president may assert a fraudulent inducement claim against the president." Apple v. Atl. Yards Dev. Co. LLC, No. 11-cv-5550 (JG)(JMA), 2012 WL 2309028, at *7 (E.D.N.Y. June 18, 2012) (citing LIUS Grp. Int'l Endwell, LLC v. HFS Int'l, Inc., 92 A.D.3d 918, 939 N.Y.S.2d 525, 527 (2d Dep't 2012)). Here, because Michael Bassick was not a party to either of the Wild Bunch–Vendian contracts here at issue, the fraud claims against him are not duplicative of the contract claim against Vendian.

Defendants, relying mainly on Bridgestone/Firestone itself, nonetheless argue that the rule against duplicative fraud claims applies equally to non-signatory corporate officers. Their reliance on this case is misplaced. Bridgestone/Firestone analyzed whether a fraud claim was duplicative as against both the contracting entity and an individual defendant because the corporate defendant was an alter ego of the individual defendant. See 98 F.3d at 17–18. In other words, the fraud claim was duplicative as against the non-signatory individual defendant because, in effect, he was the company, and there was thus only one contracting party. No such circumstances are present here.

Defendants' remaining authorities are no more persuasive. In particular, while TVT Records v. Island Def Jam Music Grp., 412 F.3d 82 (2d Cir. 2005) is arguably consistent with defendants' position, in that case no party raised, and the Second Circuit did not discuss, whether fraud claims can, in principle, be duplicative as against non-signatories. Finally, defendants' reliance on Grappo v. Alitalia Linee Aeree Italiane S.p.A., 56 F.3d 427, 434 (2d Cir. 1995), is difficult to fathom because it sustained, over a duplication argument, fraud claims against both the contracting entity and the individual defendant. Moreover, Grappo, even as it noted the rule against duplicative fraud claims, ultimately rejected the argument "a corporate employee ... is somehow immune from [plaintiff's] fraud claim," which is effectively defendants' position here. See 56 F.3d at 434. Thus, the duplication argument is only cognizable against Vendian.

 Turning to the first Bridgestone/Firestone factor, i.e., whether Wild Bunch has alleged that Vendian had a "legal duty separate from the duty to perform under the contract," the parties here focus exclusively on the duty to disclose material facts that "may arise ... where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984). "As a threshold matter, the doctrine requires satisfaction of a two-prong test: that the material fact was information 'peculiarly within the knowledge' of West Realty, and that the information was not such that could have been discovered by Associates through the 'exercise of ordinary intelligence.'" Jana L. v. W. 129th St. Realty Corp., 22 A.D.3d 274, 802 N.Y.S.2d 132, 135 (1st Dep't 2005). Defendants argue that no such duty arose in this case.

But, in fact, the defendants had a duty to disclose John Bassick's alleged unilateral control over Vendian's cash flow. Wild Bunch alleges that defendants had superior knowledge that John Bassick—the father of defendant Michael Bassick and the secret owner, founder, and/or controlling shareholder of Vendian—had, essentially, veto power over Vendian's investments; that this knowledge was not available to Wild Bunch through the exercise of diligence; and that it was material to Wild Bunch, which specifically told Vendian that it would work with Vendian "only . . . if Wild Bunch was assured of Vendian's business and financial wherewithal and ability to finance the Picture." Am. Compl. ¶ 14. Indeed, defendants not only knew that Wild Bunch, in entering the SAA with Sacha, was relying on defendants' representations about Vendian's cash flow and present ability to fund the film, but also deliberately cultivated just such reliance. Id. ¶¶ 17, 20–21; see also November 2014 Email, Ex. 2 to Am. Compl. ("Lets offer [to Sacha] to gap $0–3mm for principal plus 20%.") These allegations are sufficient to support a duty to disclose at the pleading stage.

 Defendants attempt to avoid this result in two ways. First, defendants argue that the "superior knowledge" doctrine is inapplicable because it is limited to "situations where a party to a transaction has superior knowledge of a material defect or problem with the subject of the transaction, such as a product or service," and not, by contrast, to how a party "planned to perform or pay under the contract." Def. Mem. at 16 (emphasis in original). The Court is not persuaded. Rather, as defendants' own cases indicate, the heartland of this doctrine is the realization that an arm's-length negotiation cannot honestly operate if one party keeps secret a material fact that the other party cannot

reasonably discover, see, e.g., Woods v. Maytag Co., 807 F.Supp.2d 112, 125 (E.D.N.Y. 2011), and there is no reason in principle why superior knowledge of secret information about how a party "plan[s] to perform or pay" should be exempted from disclosure, assuming the other conditions of this doctrine are satisfied. Moreover, assuming arguendo that defendants correctly state the law, Wild Bunch alleges significantly more than a mere failure to explain how Vendian would pay on the contract. Wild Bunch further alleges that defendants deliberately concealed Vendian's alleged potential inability to ever pay at all because a concealed principal controlled the purse strings. As explained above, this is precisely the type of "peculiar knowledge" that the doctrine demands be disclosed.

Defendants also argue that no duty to disclose arises where defendants are only alleged to have superior knowledge "about the particulars of [their] own business practices." See KCG Americas LLC v. Brazilmed, LLC, No. 15-cv-4600 (AT), 2016 WL 900396, at *7 (S.D.N.Y. Feb. 26, 2016) (citing MBIA Ins. Corp. v. Countrywide Home Loans, Inc., 87 A.D.3d 287, 928 N.Y.S.2d 229, 235–36 (1st Dep't 2011)). The Court disagrees. KCG Americas and MBIA Insurance Corp. stand only for the proposition that, in the negligent misrepresentation context, specialized knowledge of one's own business practices does not give rise in a sophisticated business transaction to the "special relationship of trust or confidence" required for that tort. See MBIA Ins. Corp., 928 N.Y.S.2d at 235. But this is a fraud case, not a negligent misrepresentation case, so no such special relationship is needed. Just as importantly, the allegation here goes well beyond merely concealing "the particulars of [Vendian's] business practices." Instead, Wild Bunch alleges that the defendants, in response to Wild Bunch's specific queries, deliberately con-

cealed highly material information about the true nature of Vendian's paper commitments, i.e., that they were, in effect, sham commitments subject to an after-the-fact cancellation at the whim of an undisclosed principal. Thus, a duty to disclose arose.[3]

▮▮▮▮▮ Turning to the "collateral or extraneous" representation branch of the Bridgestone/Firestone test, defendants argue that their alleged false statements that they intended to comply with the $3 million funding contract are not collateral to either of the Wild Bunch–Vendian contracts. As the Second Circuit has explained:

> New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement. Hence, a claim based on fraudulent inducement of a contract is separate and distinct from a breach of contract claim under New York law.

Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007) (citation omitted). Thus, "if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim." First Bank of Americas v. Motor Car Funding, Inc., 257 A.D.2d 287, 690 N.Y.S.2d 17, 21 (1st

Dep't 1999). Moreover, a plaintiff may maintain a fraudulent inducement claim alongside a breach of warranty claim where proof of the false statement would also prove that the warranty was false. See Merrill Lynch, 500 F.3d at 184 (explaining that under New York law, "[a] plaintiff may elect to sue in fraud on the basis of misrepresentations that breach express warranties" because "[a] warranty is not a promise of performance, but a statement of present fact").

It is true that some courts in this district are seemingly split on whether misrepresentations concerning a party's current financial wherewithal or ability to perform on a contemplated contract are sufficiently "collateral" to maintain fraudulent inducement and contract claims simultaneously. Compare EED Holdings v. Palmer Johnson Acquisition Corp., 387 F.Supp.2d 265, 279 (S.D.N.Y. 2004) (sustaining fraud claim based on "alleged misrepresentations of fact concerning the present conditions of PJI's finances and operations" that induced plaintiff to enter a contract to buy a yacht) and KCG Americas, 2016 WL 900396, at *4 ("Representations about an entity's ability to perform under a contract are distinct from representations that the entity will perform.") with Dupont Flooring Sys., Inc. v. Discovery Zone, Inc., No. 98-cv-5101 (SHS), 2004 WL 1574629, at *11–12 (S.D.N.Y. July 14, 2004) (dismissing, on summary judgment, fraud claim premised on misrepresentations that defendant "had a 'national pres-

---

**3.** Defendants' reliance on KCG Americas is misplaced for the further reasons that, even as that case rejected a negligent misrepresentation claim, it sustained a fraud claim under the "collateral or extraneous" representation branch of the Bridgestone/Firestone test, holding that "[r]epresentations about an entity's ability to perform under a contract are distinct from representations that the entity

will perform." See KCG Americas, 2016 WL 900396, at *4. Thus, even if defendants found some support for that case's "no duty" holding (and they do not), it seriously undermines defendants' ultimate position. And, indeed, Wild Bunch's fraud claims also survive to a significant extent for this exact reason. See infra.

ence' and had experience in installing flooring").

■ In this Court's views, however, New York law is clear that, at a minimum, false statements about a party's present financial condition or current ability to perform, made in order to induce a party to enter into a contract, will support a claim of fraudulent inducement. Such statements are not "promissory statement[s] of what will be done in the future," but are instead "misrepresentation[s] of a present fact," see Merrill Lynch, 500 F.3d at 184, made to induce the counter-party to enter the contract. In seemingly ruling to the contrary, Dupont Flooring stated that "representations of expertise and resources[ ] are not considered collateral to the contract because they simply underscore the defendant's purported intention and ability to perform the contract and are thus simply part and parcel of the intention to perform." See 2004 WL 1574629, at *12 (internal quotation marks omitted). This statement cannot be reconciled with Merrill Lynch, which makes clear that it is the precise form the statement takes—present fact versus future intent to perform—that drives the analysis. It is one thing to promise to perform a contract. It is quite something else to induce someone to enter a contract by lying as to one's current financial condition, present ability to perform, and the like. Courts therefore cannot recharacterize statements that are unmistakably about present facts and made for the purpose of inducing a party to enter a contract as being about future

intent to perform. Indeed, such an approach would severely undercut the fraudulent inducement cause of action, because lies about one's solvency and abilities to perform are exactly the sorts of lies that would likely induce a counterparty to enter a contract.

Applying these principles, the Court finds that defendants' pre-contractual misrepresentations of present fact about Vendian's current finances and ability to invest up to $3 million in "Snowden" were "collateral or extraneous" to the 2015 Contract and 2016 Contract (and therefore not duplicative of the contract claim), at least to the extent they were made for the purpose of inducing plaintiff to enter the Contract. See EED Holdings, 387 F.Supp.2d at 279; see also Am. Compl. ¶¶ 15–17. Even the allegedly false warranties of present fact in the 2015 Contract itself are likewise sufficiently collateral to survive, for they merely recite the inducing lies. See Merrill Lynch, 500 F.3d at 184; Am. Compl. ¶ 50.[4]

■ By contrast, however, Wild Bunch's fraud claims are impermissibly based on non-collateral statements to the limited extent they are based on statements made after the 2015 Contract was formed. See, e.g., Am. Compl. ¶ 39. One of Vendian's obligations under the 2015 Contract was to enter a further contract to pay the $3 million if certain conditions were met. After that contractual duty kicked in, any further statements about Vendian's ability or intention to pay the $3 million, whether false or not, are not cognizable under Bridgestone/Firestone, because they amount to mere false assurances of Vendi-

---

4. In particular, Vendian warranted in the 2015 Contract that:

(i) it has the full right, ability and authority to enter into this Agreement and to perform its obligations contained herein; . . . . (iii) none of the statements, representations or warranties made by it in this Agreement contains any untrue statement of a material fact or omits any material fact; and (iv) it

has not made or assumed and will not hereafter make or assume any commitment, agreement or obligation that will or might (as reasonably foreseeable) conflict with or impair its ability to perform its obligations hereunder or impair the other party's complete enjoyment of the rights and privileges granted to it hereunder.

Am. Compl. ¶ 50; Ex. 1 t Am. Compl., ¶ 12.1.

an's intent to perform the 2015 Contract. See, e.g., Rolls–Royce Motor Cars, Inc. v. Schudroff, 929 F.Supp. 117, 124 (S.D.N.Y. 1996) (dismissing as duplicative fraud claim based on allegations that "representatives of Carriage House falsely stated ... that Carriage House was able to pay what it owed under the sales contract, and intended to do so").

In sum, Wild Bunch's fraud claims are not duplicative of its contract claim because defendants had a duty to disclose their superior knowledge of John Bassick's alleged critical role in funding Vendian's commitments. Further, to the extent the fraud claims are based on alleged false statements of present fact made prior to or within the 2015 Contract (but not to the extent the fraud claims are based on representations made thereafter), the fraud claims are likewise not duplicative of the contract claim.[5]

■■■ Defendants' next main argument is that Wild Bunch fails to allege reasonable reliance. As a threshold matter, however, the parties dispute whether the Court may consider allegations in the original complaint that were omitted from the amended complaint, a question on which some district courts have reached different conclusions. Compare Kilkenny v. Law Office of Cushner & Garvey, L.L.P., No. 08-cv-588 (KMK), 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) ("[O]nce an amended pleading is filed, a court may not import information that was contained in the prior pleading but omitted from the amended pleading.") with Poindexter v. EMI Record Grp. Inc., No. 11-cv-559 (LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27,

2012) ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits."). Defendants argue that Wild Bunch strategically omitted from its amended complaint certain allegations relating to the contract negotiations to avoid dismissal on reliance grounds. However, although the better rule is that, absent unusual circumstances or bad faith, courts should decline to consider prior but now omitted allegations on a motion to dismiss an amended pleading, in this case, the issue is wholly academic. Wild Bunch easily meets its pleading burden even if all contested allegations are considered.

■■■ As a general matter, dismissals for failure to allege reasonable reliance are heavily disfavored. As the Second Circuit has explained, "the reasonableness of a plaintiff's reliance is a 'nettlesome' and 'fact-intensive' question, which we, like our Circuit's many district courts, will not lightly dispose of at the motion-to-dismiss stage." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 186 n.19 (2d Cir. 2015) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir.1997)); see also Bayerische Landesbank, N.Y. Branch v. Barclays Capital, Inc., 902 F.Supp.2d 471, 474 (S.D.N.Y. 2012) ("Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss."). Thus, while courts occasionally dismiss fraud claims for failing to allege reliance, see, e.g., Ward v. TheLadders.com, Inc., 3 F.Supp.3d 151, 165–67

---

**5.** The parties' papers also dispute the third branch of Bridgestone/Firestone, i.e., whether Wild Bunch's fraud claims "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." See 98 F.3d at 19. At oral argument, however, Wild Bunch made no effort to defend its fraud claims on these grounds. See Transcript dated June 2, 2017. In any event, the Court need not reach this question, because a fraud plaintiff need only satisfy one of the Bridgestone/Firestone factors, and Wild Bunch here satisfies the better part of two.

(S.D.N.Y. 2014), that is the exception, not the rule.

This case falls comfortably within the mine run of cases for which dismissal on reliance grounds is inappropriate. Defendants contend that the alleged false statements were inherently unreliable because they were made during negotiations and because some were precatory in form. In particular, defendants place great weight on the November 2014 Email, which, concededly, does not state in so many words that Vendian has the present ability to invest $3 million without further contingencies or approvals.[6] But, granting all reasonable inferences to the plaintiff, see Brown Media Corp., 854 F.3d at 156–57, the email's statement "offer[ing] to gap $0–3mm for principal plus 20%" implicitly represents just such solvency and ability to fund the contract without further contingencies. Moreover, Vendian wrote this email intending that Wild Bunch would convey Vendian's offer to Sacha, see, e.g., Am. Compl. ¶¶ 17, 21, so Wild Bunch's reliance was plainly reasonable at least as far as entering the SAA with Sacha in February 2015 goes. And, as defendants themselves recognize, see Def. Reply at 9–10, the SAA was a key step on the path toward Wild Bunch's contracts with Vendian, so to the extent Wild Bunch reasonably relied on defendants' representations in entering the SAA, so too did it reasonably rely on defendants' representations—

which did not vary materially on the key point that Vendian had the present ability to invest $3 million without further contingencies or approvals—in ultimately entering its agreements with Vendian.

Defendants' myopic focus on the November 2014 Email is also misplaced. Wild Bunch also alleges that Vendian and Michael Bassick made, and Wild Bunch relied on, a variety of other oral statements that affirmed defendants' commitment and ability to fund $3 million and were made prior to entering the SAA and the 2015 Contract. See, e.g., Am. Compl. ¶ 16 ("Bassick and Woodrow represented that Vendian would and could provide up to $3 million to cover any monetary shortfalls in financing the Picture .... Woodrow and Bassick consistently assured Maraval that Vendian was ready and willing to provide the Gap Financing, without any mention of preconditions to funding."); id. ¶ 35 (alleging that Vendian's counsel referred in July 30, 2015 to Vendian's "commitment of $3MM nearly a year ago (to be paid on signature of the agreement)").

Thus, in sum, Wild Bunch alleges that, in entering the SAA, the 2015 Contract, and the 2016 Contract, it relied on a steady drumbeat of false assurances of Vendian's solvency and ability to perform on a three million dollar gap financing contract, which more than satisfies Wild Bunch's limited pleading burden on the element of reasonable reliance.

---

**6.** In relevant part, the November 2014 Email reads as follows:

As discussed the Snowden film is pretty straight forward. Lets offer to gap $0–3mm for principal plus 20%. In the event we fund please ask for 2 producer credits and 3 ep credits and a company credit for Vendian Entertainment. In terms of the company credit please ask for an animated logo and first position "in association with" worldwide. Lets also see if we can get some equity on the deal. Your numbers are allowing this film to happen so we should get a piece of the equity in the event the films

performs. How do you suggest we get a financing fee? Is it possible for us to add 10% to whatever we fund as a fee and gross up the investment?

In the event they do not need our money as discussed we would like a $150k kill fee for the commitment and 3 ep credits and a company credit for Vendian Entertainment. In terms of the company credit please ask for an animated logo and first position "in association with" worldwide.

November 2014 Email, Ex. 2 to Am. Compl. (errors in original).

Finally, defendants feint at an argument that the fraud claims fail because Wild Bunch does not "explain why the statements were fraudulent." See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citing Fed. R. Civ. P. 9(b)). However, rather than develop this position, defendants merely rehash their argument, under Bridgestone/Firestone, that the fraud claims are impermissibly duplicative. See Def. Mem. at 22–24; Def. Reply at 7–8. This argument therefore fails for the reasons discussed supra. In any event, Wild Bunch has clearly met this burden as well. The alleged false statements that Vendian had the present ability to fund a $3 million contract without further contingencies were allegedly false because, in fact, a concealed principal unilaterally controlled Vendian's purse strings and had the power to defund Vendian's commitments after the fact.

For the foregoing reasons, the Court, on June 9, 2017, denied defendants' motion to dismiss Wild Bunch's fraud claims.